CAUSE NO.: <u>5:24-CV00756</u>

| | | |
|---|---|---|
| PATRICIA ALBARADO; | § | IN THE UNITED STATES |
| ERICA BARRERA, Individu | § | DISTRICT COURT |
| and ANF of D.R., Minor, | § | |
| Michael Brown, Individually | § | |
| And ANF of V.B, Minor, et al | § | |
| | § | |
| Plaintiffs | § | OF THE |
| | § | |
| | § | |
| v. | § | |
| | § | |
| UNITED PARCEL SERVICE, INC. | § | WESTERN DISTRICT OF TEXAS |
| A.K.A and DBA as UPS | § | |
| | § | |
| FEDERAL EXPRESS CORPORATION | § | |
| A.K.A AND DBA AS FedEx | § | |
| Corporation | § | |
| | § | |
| Defendants | § | |

<u>PLAINTIFFS' SECOND  AMENDED COMPLAINT</u>

COMES NOW, the Plaintiffs, of Uvalde, Texas:  Patricia Albarado, and Erica Barrera, Individually and ANF of D. R., Michael Brown, Individually and ANF of V.B., Jennifer Davis, Individually and ANF of Z. D., Angeli-Rose Gomez, Individually and ANF of G.B. and A.G., Luz Hernandez, Individually and ANF of N.J., Carla Rose King, Tiffany Luna, Individually and ANF of A.P., Tamica Martinez, Individually and ANF of R.D., Tiffany Massey, Yolanda Morales, Individually and ANF of  Z.G., Nicole Faye Ogburn, Mary Ann Reyes, Individually and ANF of A.S. and A.S., Bianca Rivera, Individually and ANF of G. R., Jennieka Rodriguez, Individually and ANF of V.S, Minor, Brenda Sonora, David Trevino, Individually and ANF of A.T., I.T., Minors Jane Doe, and D.T., Krystal Upton, Individually and ANF of J.T. and B.T., Esmeralda Velasquez, Individually and ANF of C.V., Sofia Zapata, Individually and ANF of M.S. III.

<u>DEFENDANTS</u>

United Parcel Service,  aka UPS, has a principal office in San Antonio, Texas with decision makers and daily affairs of more than common low level decision makers. One of the principal offices is located at 7129 Eckhert Rd.; San Antonio  TX 78238.

Federal Express Corporation, AKA FedEx, AKA FedEx Corporation, has a principal office in San Antonio, Texas with decision makers  and daily affairs of a more than common low level decision-makers. One of the principal offices is at 151 Interpark Blvd., San Antonio, TX  78216.

UPS may be served at its principal office located at 55 Glenlake Parkway, N.E., Atlanta, Georgia 30328. UPS is a nationwide network shipping carrier that facilitates package pick-up and delivery services throughout the United States and worldwide. At all relevant times, UPS was engaged in the business of labeling, promoting, packaging, and delivering products, including the Hellfire trigger, for the domestic and international market, for use by untrained civilians and young adults.

Federal Express Corporation; FEDEX  Corporation  may be served at its Principal Executive Office at 942 South Shady Grove Road Memphis Tennessee. FEDEX is a nationwide network shipping carrier that facilitates package pick-up and delivery services throughout the United States and worldwide. At all relevant times, FEDEX was engaged in the business of labeling, promoting, packaging, and delivering products, including the DAVIS FIrearm Ar-15, for  the domestic market, for use by untrained civilians and young adults. Federal Express Corporation represented on July 28, 2024  that they are the correct party in the case;, and that they will sign a waiver of service.

DISCOVERY CONTROL PLAN

The plaintiffs intend that discovery be conducted under LEVEL 3 OF RULE 190 of the TEXAS RULES OF CIVIL PROCEDURE.

COMMON/ASSUMED NAME

The Defendants are being sued under their common or assumed name per Tex. R. Civ. P. 28. In the event the party is misnamed or are not included herein, it is the Plaintiff's contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiffs contend that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice

FACTS

1.  The facts contained in this petition were pieced together without access to police reports, incident video statements, autopsy reports, ballistic reports, blood splatter reports, blood tests,  as no state agency nor federal agency responded to open records request nor Freedom of Information Act request including the ATF, the Uvalde Independent School District, the District Attorney of Uvalde, the Texas Department of Public Safety, the City of Uvalde, The Uvalde Police Department; in an apparent concerted effort to deny the children and families of Uvalde Texas Due Process of Law. Without the information, Plaintiffs acknowledge and agree they will amend their pleadings when the information becomes available, and as it is necessary.

2.  On May 24, 2022, Salvador Ramos, the shooter, murdered, assaulted, kidnapped, and terrorized the teachers and students at Robb Elementary  School in Uvalde, Texas. The deadly mass shooting lasted for approximately 77 minutes from the

time he entered the school to the time he was killed. Salvador Ramos, who entered the school through an unlocked door or defective door and locking system on the school's west side as children were in the school celebrating their last day of class before the summer break. Ramos murdered nineteen (19) third and fourth-grade children and students in classrooms 111 and 112 and left three teachers dead or dying. The Plaintiffs and school children suffered mental and emotional trauma as a result of hearing the shots, fearing for their lives, and the lives of their classmates. Upon information and belief, the weapon Ramos was armed with was the Daniel Defense AR-15, which was modified into a fully automatic weapon with the use of the Hellfire Gen 2 on that day, which turned the Daniel Defense AR-15 into an automatic or semi-automatic weapon. Based upon gathered information the shooter, Salvador Ramos,  was under 18 when he purchased the AR-15 online, and the modifying Hellfire Gen. 2.

3.0    The Conditions of Carriage for UPS states:  "Shipments must not contain goods which might endanger human or animal life or any means of transportation, or which might otherwise taint or damage other goods being transported by UPS, or the carriage, export or import of which is prohibited by applicable law of common carriers." The Plaintiff's assert that the contract of carriage violations constitute negligence per se.

4.0  The Conditions of Carriage for Federal Express states:   The  following  items are  not  acceptable  for  carriage  to  any  international  destination: 2)     EXPLOSIVES, FIREWORKS  AND  OTHER  ITEMS  OF  AN  INCENDIARY  OR  FLAMMABLE  NATURE; 6)   FIREARMS, WEAPONRY, AMMUNITION AND THEIR PARTS.

4.1     Additional restrictions may apply depending upon destination and service and  service  option  used  and  various  regulatory  and  customs  clearances  may  be required for certain commodities, therefore extending the transit time. FedEx reserves the right to reject Packages based upon these limitations or for reasons of security or

safety. FedEx shall be entitled to charge an administrative fee for packages rejected and for the costs of returning goods, where applicable, to the Sender. Further information is available upon request.

4.2  DANGEROUS GOODS  The Sender must provide and shall be liable for the fully effective packaging of all Dangerous Goods, in compliance with all requirements of the latest edition of the IATA Dangerous Goods Regulations with regard to classifications, packaging, marking and labeling, and with any other applicable laws, regulations or rule

4.3    All Dangerous Goods which are destined for or which transit the U.S.A. must be accompanied by a Sender's Declaration and Certification as required by U.S. law, which the Sender can obtain.

4.4    INSPECTION OF SHIPMENTS  11.1. FedEx may, at its option, or upon the request of the competent authorities, open and inspect any Shipment at any time, and shall incur no liability of any kind therefore.

4.5    In accordance with applicable regulations in various jurisdictions FedEx is required to undertake (random) X-ray screening. FedEx may undertake such screening and the Sender and Recipient hereby waive any possible claims for damages as a result of screening.

5.  The Plaintiff's assert that the contracts of carriage violations establish negligence per se.

6.. The Defendant shooter lived at 552 Diaz St., Uvalde, Texas.  The grounds of Robb Elementary School are approximately 924 feet away.  A school zone means within a distance of 1000 feet from the grounds of a public school.  18 U.S.C. § 921(a)(26).

7.  The United States Congress states that "firearms and ammunition move easily in interstate commerce and have been found in increasing numbers in and

around schools, as documented in numerous hearings in both the Committee on the Judiciary,  the House of Representatives and the Committee on the Judiciary of the Senate  18 U.S.C. § 922(q)(1)(C).  In fact, even before the sale of a firearm, the gun, its component parts, ammunition, and the raw materials from which they are made have moved in interstate commerce; 18 U.S.C. § 922 (q)(1)(D) the occurrence of violent crime in school zones has resulted in a decline in the quality of education in our country."  18 U.S.C. § 921(q) (1) (D) It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile, a handgun; or ammunition.  18 U.S.C. § 921 (q)(1)(D).  18 U.S.C. § 922 (q)(1)(D)

8.   A licensed manufacturer may only sell a firearm to a person who does not appear in person at the licensee's business premises only if the transfer states that he is 18 years of age or more.  18 U.S.C. § 922(q)(c)(1).  Daniel Defense an online merchant sold the  AR-15 to a person, the shooter, who did not state that he was 18 years of age or older; was not 18 years of age; and did not provide proof that he was 18 years of age; Fed-Ex also transported the AR-15 without inquiring as to the age of the purchaser.

. 9.   It is unlawful for a common or contract carrier to transport or deliver in interstate or foreign commerce any firearm with reasonable belief that the transportation would be in violation of 18 U.S.C. § 922.  18 U.S.C. § 922(f)(1).  The contract carrier Federal Express transported a weapon to a location that was within 1000 feet of a school zone.  The defendant Federal Express is negligent per se for shipping a firearm to a person, the shooter Salvador Ramos,  who was living within 1000 foot of a school zone; and Congress passed § 922 specifically for the purposes of preventing firearms in and around schools. It shall be unlawful for any individual knowingly to possess a firearm tha has moved in, or that otherwise affects interstate or foreign commerce at a

place that the individual knows, or has reasonable cause to believe is a school zone. 18 U.S.C. § 922(q)(2)(A).

10. The transferor FedEx did not prior to the shipment of the firearm, forward a signed sworn statement to the shooter's residence, and receive a return receipt evidencing delivery of the statement. 18 U.S.C. § 922(c)(2). The transferor Federal Express did not delay shipment or delivery for seven days following receipt of the notification.18 U.S.C.§ 922(c)(3)... The acts of Federal Express resulted in the failure of the guardian of the Shooter Salvador Ramos to prevent the purchase of the AR-15. The failure of FedEx to forward a signed statement to the shooter's residence, and receive a return receipt evidencing delivery of the statement constitutes negligence per se. The shooter therefore did not make a sworn statement that his receipt of the firearm was in violation of any statute of the State of Texas.

11. !8 U.S.C.§ 933(a) states "It shall be unlawful for any person to ship, transport, transfer . . . any firearm to another person or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying or possession of a firearm by the recepient would constitute a felony (as defined in section 932(a)" ). 18 U.S.C. § 932(a)(3) states that "the term felony" means any offense under Federal or State law punishable by imprisonment for a term exceeding 1 year. 18 U.S.C. § 933(a).

11. Texas Penal Code, § 46.14: "FIREARM SMUGGLING. (a) A person commits an offense if the person knowingly engages in the business of transporting or transferring a firearm that the person knows was acquired in violation of the laws of any state or of the United States. For purposes of this subsection, a person is considered to engage in the business of transporting or transferring a firearm if the person engages in that conduct:

(1)  on more than one occasion; or

(2)  for profit or any other form of remuneration.

(b)  An offense under this section is a felony of the third degree . . . "

12.   18 U.S.C. § 922(c)(1) states a licensed manufacturer or licensed dealer may sell a firearm to a person who does not appear in person at the licensees business premises only if the transferee submits to the transfereror a sworn statement that he or she  is 18 or  years of age for the purchase of a rifle, and that sworn statement is forwarded to the chief law enforcement officers place of residence, and the transferee must delay shipment or delivery for a period of 7 days.   The 18 year old Salvador Ramos could not legally have been transferred or sold the weapon by Oasis Firearms in Uvalde Texas on May 17, 2022, and on May 20, 2022 if he turned 18 on May 16, 2022.


13.     The Plaintiffs assert, based upon public news sources, such as Newsweek.com, independent.co.uk, and findagrave.com:  The shooter Salvador Ramos turned 18 years of age on May 16, 2022.  The shooter  purchased the AR-15 on an unknown date from Daniels Defense before or very soon after his 18th birthay on May 16, 2022..  The shooter Salvador Ramos then was transferred the first AR-15 on May 17, 2024, the day after his birthday, by Oasis Firearms in Uvalde Texas.  The second AR-15 was purchased or transferred to Salvador Ramos  by Oasis Firearms in Uvalde Texas on May 20, 2022.  The shootings at Robb Elementary occurred on May 24, 2022 Therefore, the shooter purchased the AR-15's before his 18th birthdate on May 17, 2024 as it it appears doubtful that the AR-15 would have been shipped and received by Oasis in one day;   Federal Express transported the AR-15 to the shooter who lived within 1000 foot of a school zone within one days and four days on his 18th Birthday;

and lastly assuming Salador Ramos purchased the weapons online on his 18th birthday on May 16, 2024; he could not legally receive the firearms before May 23, 2024.

14   The   Plaintiffs   assert that actions of Federal Express constitutes firearm smuggling because the transfer of the firearm to the shooter was not in accordance with 18 U.S.C. § 922(c)  because: The shooter did not appear when purchasing the firearm online.   A signed sworn statements in conformity with 18 U.S.C. § 922(c)(1) was not completed by the shooter stating he was 18   Neither Daniel Defense or Oasis Firearms forwarded a copy of the sworn statements to the "chief law enforcement officer" of the transferee's place of residence, and received a return receipt evidencing delivery of the statement or has the statements returned due to the refusal of the addressee to accept such letter; and the transferor, Daniels Defense did not delay shipment or delivery for a period of seven days  following  receipt of the notification of acceptance or refusal of delivery of the statement.   The transferor did not prior to the shipment of the firearm, forward a signed sworn statement to the shooter's residence, and receive a return receipt evidencing delivery of the statement.   The Transferor did not delay shipment for a period of seven days following the receipt of notification or refusal.

15. Basically then, the AR-15 was shipped to Salvador Ramos, who was either under 18 years of age at time of purchase, or who had just turned 18 years of age was transferred the AR-15   in violation of the laws because there is a seven day waiting period to receive the firearms for the time Salvador Ramos picked up the two AR-15's. Salvador Ramos turned 18 years of age on May 16th and was somehow able to pick up the weapons on May 17, and May 20th after he was certifying he was 18, and within one day and four days of his turning 18 years of age.   The purposes of these laws regarding the purchase of firearrams online and transfer is to protect the public.

16. Common carriers provide truck transportation to the general public. U.S. Department of Transportation. The duties and liabilities of a carrier in Texas are the same as prescribed by common law; and, a carrier may not limit its common law liability , unless the limitation is in conspicuous writing in a written arrangement for transportation, including a bill of lading or contract for transportation. Tex. Trans. Code § 5.001. The Plaintiffs sue for negligenc of Fed Ex and UPS. The Plaintiffs assert that a special relationship existed between the purchaser of the firearm, and it justifies imposition liability on Fed Ex and/or UPS ; and Fed Ex and/or UPS conduct in transporting the firearm and the Helfire trigger is the foreseeable result of the defendants negligent conduct.

16.1 A person who gives a chattel to another, knowing the other person, is likely to use the chattel in a manner involving the unreasonable risk to himself or herself or others, may be held liable for harm caused by the use of the chattel. Prather v. Brandt, 981 S.W>2d 801, 806 (Tex. App– Houston [1st Dist.] 1998, pet. denied) In this case, Fed Ex trnasported the firearm illegally.

17. The shooter, Salvador Ramos, upon information and belief: 1) Had a history of mental and behavioral problems, which was apparent by his bizarre appearance, and was well known within the small community of Uvalde, Texas, which was in part evidenced by his nickname, "school shooter."; 2) Was under 18 years of age when he purchased the Hell Fire trigger on-line which modified the AR-15 into an automatic weapon which was used at Robb Elementary School to slaughter children and adults; 3) The shooter used his address at 715 Carrizo Drive when he purchased the Hellfire trigger, which was within 1000 feet of the Robb Elementary school grounds; 4) The Hellfire trigger was shipped through UPS to the shooters home at 715 Carrizo Road which was within 1000 feet of Robb Elementary school grounds; 5) The shooter used

the address at 715 Carrizo Drive when making the online purchase of the AR-15 through Daniel Firearms; The illegally purchased AR-15 which was used in many mass shootings, was shipped by Federal Express to Oasis Firearms by Daniels Defense;  6) Daniel Defense and Oasis Firearms acted as "trnasferors" of the weapon and transferred the AR-15 to the shooter even though he was under 18 at the time of the purchase from Daniel Defense, and he lived within 1000 feet of the  school grounds of Robb Elementary; and, the shooter did not fill out a sworn statement; and there was not a seven day delayed shipment of the firearm; 7)  Oasis Firearms illegally transferred the AR-15 to the shooter Ramos, which he purchased when he was under 18 years of age; and when he lived within 1000 feet of Robb Elementary School;  8)  Oasis firearms illegaly sold the shooter ammunition used in the AR-15 which was used to slaughter children and adults at Robb Elementary School;  9)  The close proximity of the shooters home enabled him to drive to the Robb Elementary School, even though he could not drive a vehicle, and therefore the United States Code Statutes which prevent the shipping to persons under 18 and within 1000 feet of school zones would have prevented the shooting at Robb Elementary;  10)  UPS and FedEx acted in combination and/or collusion  to provide AR-15 modified to machine guns to   persons who persons under 18 within school zones; 11) Effectively UPS and FedEx acted as illegal gun runners;  12) The Texas Penal Code § 46.14 prohibits the firearm smuggling, that is the that is the transporting or transferring of a firearm that was acquired in violation of the laws of any state or the United States;   13) The Ar-15's were shipped by FedEx in violation of 18 U.S.C. § 922(c).

18.  The Plaintiffs assert that the actions of UPS, Federal Express, individually or in combination; jointly and/or severally;  caused and proximately caused the delivery, and the modification of a weapon into the hands of a person likely to act as a school

shooter and who did act as a school shooter, that is Salvador Ramos; and the Defendants abrogated various federal and state laws designed to protect school children from mass shooters by transporting the Ar-15 and the Hellfire trigger.

19. UPS.com states as the "UPS Tariff/Terms and Conditions of Service - United States" states, "the shipper shall comply with and shall ensure that each Shipment containing  Firearm Products  complies with all federal, state, and local laws applicable to the Shipper, recipient, and Package, including without limitation, age restrictions."

20.  18 U.S.C Section 922(1)(C)  states that firearms and ammunition move easily in interstate commerce and have  been found in increasing numbers in and around schools.

21. 18 U.S.C. Section 922(1)(D) states that even before the sale of a firearm, the gun, its component parts ammunition have considerably moved in interstate commerce, Parents may decline to send their children to school due to concerns about gun violence.  18 U.S.C. Section 922(1)(D). School systems find it almost impossible to handle gun related crime by themselves,(1)(H).

22. It is illegal to sell, deliver or otherwise  transfer to a person who the transferor knows or has reasonable to believe is a handgun or ammunition that is suitable for a handgun.18 U.S.C. 922.

23.  A 1990 federal law bans firearms within 1000 feet of public and private schools.  Robb Elementary School is located at 715 Old Carrizo Rd. in Uvalde Texas. The shooter's home was at 552 Diaz St. Uvalde Texas.  The shooter's home is between 2 to 3 minutes from Robb Elementary, .5 miles.  Oasis firearms is located at 2900 E. Main, Uvalde Texas and it is 3.5 miles to 3.7 miles or, 10 minutes  there to 715 Old Carrizo Rd., Uvalde Texas   The distance from Robb Elementary to Oasis Firearms is 3.3 miles by street.

24.  United Parcel Service ships firearm products.  UPS shipped a Hellfire trigger System directly to an underage person, which was used to modify the AR 15 used to massacre children at the Robb Elementary School on May 24, 2024.

25.   Federal Express delivered the AR-15 to Oasis firearms, which was purchased illegally by the  underage shooter, Salvador Ramos.  The Federal Express Contract of Carriage permit  has unacceptable items for carriage, such as dangerous goods.

(1) It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile—

      (A) a handgun; or

      (B) ammunition that is suitable for use only in a handgun.

(2) It shall be unlawful for any person who is a juvenile to knowingly possess—

      (A) a handgun; or

      (B)ammunition that is suitable for use only in a handgun.

26.  18 U.S.C. Section 922(q) (2)(A)  states that it shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe is a school zone.

27.  !8 U.S.C. § 922(f) states:  "It shall be unlawful for any common or contract carrier to transport or deliver in interstate commerce any firearm or ammunition with knowledge or reasonable cause to believe that the shipment, transportation, or receipt thereof would be in violation of the provisions of this chapter."

28. The claim against UPS arises out of UPS's transportation and shipping of deadly firearm modifiers to Texas consumers without regard for the use of the product. Specifically,  UPS's  involvement  in  the  transportation  and  shipping  of  Firequest

International Inc.'s Hellfire Gen 2 trigger system to the Robb Elementary shooter Ramos.

29. UPS is a nationwide network shipping carrier that facilitates package pick-up and delivery services throughout the United States and worldwide. Upon information and belief from public records and media sources, Ramos purchased Firequest International, Inc.'s allegedly illegal Hellfire Gen 2 trigger system via online ordering while under the age of 18. Based on the information available, Hellfire Gen 2 was shipped via UPS' shipping and distribution network directly to the shooter's home in Uvalde, Texas. UPS took no action to alert its employees to the danger of this type of system or that they should not be involved in facilitating "mass murders" by transportation of potential illegal products, or at the least that the product should have been one that more information was needed  prior to transporting to Ramos. UPS negligently shipped the Hellfire trigger and enabled Salvador Ramos to shoot the children before law enforcement entered Robb Elementary.

30.  The Hellfire Gen 2 trigger system which allows a rifle to fire at a rate comparable to a fully automatic weapon, in a similar manner to a "bump stock." The trigger system installs invisibly within the pistol grip on any AR-15 style rifle and can be activated or deactivated in seconds. The trigger system permits the shooter to have a firmer grip on the gun and stock for increased accuracy, however it also allows the shooter to pull the firearm trigger at a modified rate of 350 rpms. The transportation of this device to minors, which permits the modification of AR-15s into automatic weapons, constitutes violation of the Racketeer Influenced and Corrupt Organization Act.

31.  UPS aided Firequest International, Inc. in the illegal sale and delivery of their trigger system when they accepted, transported, and delivered the trigger system to the underage shooter; the shooter who lived within 1000 foot of a school zone; and  UPS

was negligent when they failed to properly screen packages for shipping and transporting of the Hellfire trigger which has been used in prior mass shootings or murders, and which has been publicized in the media. UPS is also negligent for failing to train their employees regarding safety standards, failing to enforce safety standards and protocols, and failing to inspect and maintain packages to ensure they would be safe and free from dangerous hazards. Moreover, UPS and Federal Express each shipped separate component parts which in combination were used to make an automatic weapon, that is UPS shipped the Hellfire Trigger and Federal Express shipped the AR-15 rifle. The Hellfire trigger system and the AR-15 were transferred to an underage, mentally disturbed Ramos, through an online purchase without a proper sworn statement and without a waiting period of seven days.

32. The Plaintiffs assert UPS engaged in an ultrahazardous activity and abnormally dangerous activity. Therefore, UPS assumed the risk when they shipped the Hellfire trigger system.

33. The transportation of weapons sold weapon modifiers to minors constitutes violations of the RICO Act. UPS made no attempts to determine one or more of the following: 1) Whether the Hellfire trigger was illegal; 2) Whether the Hellfire trigger was illegally sold directly to Ramos;.    UPS had a duty to fulfill their duty to Plaintiffs and the public at large by not shipping weapon and modifiers to persons under 18 years of age, and persons who had not been screened in conformity with ATF regulations.

34. FedEx and UPS Defendants owed a duty of ordinary care to the public generally not to ship dangerous devices to minors; and/or to persons who have the indicia of mental illness; and/or to persons who lived within 1000 feet of a schoolzone; and/or did not sign a sworn statement regarding his compliance with State ordinances; which could be utilized to modify firearms to commit mass murder to persons of the

general public. That is, FedEx and UPS, by shipping the Hell-Fire trigger device and Assault-style rifles created a condition presenting an unreasonable risk of harm in which there was a sufficient probability of a harmful event that a reasonably prudent person would have foreseen or that some similar shooting event was likely to happen.

35.   A duty existed by Defendants FedEx and UPS given the degree of risk to the Plaintiffs; the probability that the Hell-Fire trigger would be used against the social utility of transporting such devices to unknown persons; the insignificant burden placed on FedEx and UPS to screen for such items; and the limited consequences of placing the burden on the Defendant not to ship the item or to ship the item with adequate warnings.

36.   The Defendants FedEx and UPS have greater knowledge of the risk or ability to control the active wrongdoer of someone who would order a Hell-Fire trigger anonymously, that was the shooter. The Defendant FedEx transported the assault-style rifles to Defendant Oasis Outback in Uvalde, Texas.   The Defendant UPS delivered the Hell-Fire trigger to the shooter. The shootings at Robb Elementary were foreseeable due to the frequency and occasions of similar events previously reported; and were in fact within common knowledge of most persons. Mass murders have become a significant and pervasive problem in the United States, and a duty exists to United States Citizens not to facilitate mass murders and/or to prevent such mass murders. The social utility of transporting devices, such as the Hell-Fire trigger and Assault rifles, through the mail does not dismiss the duty of the FedEx and UPS as there is no right to such devices until they are 18 years of age.

37. The screening of such items and inquiring what the item is, or used for, presents no undue burden on the defendant, or literally no burden to FedEx and UPS. The checking of the distance to determine whether the item would be shipped to

someone within a school zone presents literally no burden to UPS nor FedEx to determine if the home was within a school zone, as this can be checked through any GPS system.

38. The shipping of the AR-15 from Daniel Defense, to Oasis Fireams when Salvador Ramos was under 18, or without the seven day waiting period caused the damages to the Plainitffs.  18 U.S.C. § 922(c)(1) states a licensed manufacturer or licensed dealer may sell a firearm to a person who does not appear in person at the licensees business premises only if the transferee submits to the transfereror a sworn statement that he or she  is 18 or  years of age for the purchase of a rifle, and that sworn statement is forwarded to the chief law enforcement officers place of residence, and the transferee must delay shipment or delivery for a period of 7 days.  There was not a delay of seven days, and therefore, FedEx shipped the AR-15's illegally.

39.  The duty of FedEx and UPS not to ship such devices, as the Hell-Fire Trigger and the AR-15 rifles to virtually anonymous persons on line who are not screened, and or who can use the devices in a way to commit mass murder does not conflict with a more important duty.

36.  Again, the Plaintiffs have been "stonewalled" in all attempts to receive documents, evidence and discovery for all state and government agencies such as the Texas Department of Public Services, the Uvalde Police Department; the FBI, etc.

40. The Plaintiffs assert that the Defendant FedEx and UPS were performing an inherently dangerous activity; and, that the FedEx and UPS did not use the measure of a reasonably prudent person in view of the fact that the transportation of such trigger devices was extra hazardous.

41.    Plaintiffs will show that one or more or all of the above-mentioned acts and/or omissions constitute negligence and gross negligence and were the proximate cause of harm suffered by the Plaintiffs.

42.    As a proximate cause of the Gun Defendants' negligent entrustment, Plaintiffs have suffered and continue to suffer economic losses, including considerable financial expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

<u>GROSS NEGLIGENCE AS TO  DEFENDANTS</u>

43..  The Plaintiffs assert a claim for gross negligence and Plaintiffs seek punitive and exemplary damages in order to punish and deter the outrageous conduct, and reckless and conscious indifference for the safety of the Plaintiffs.

44. The Defendants were grossly negligent in selling and delivering firearms, firearm attachments, equipment and/or ammunition and involved an extreme degree of risk, considering the probability and magnitude of potential harm to the plaintiffs and public. The Defendants proceeded with conscious indifference to the rights, safety, or welfare and the general public. The acts and/or omissions of the Defendants were knowing and willful failures to abide by the applicable safety guidelines regarding the purchase and sale of firearms. These actions and/or omissions constitute malicious, willful, wanton, grossly negligent and/or reckless conduct. The acts/or omissions proximately caused or contributed to Plaintiffs' injuries and damages set out herein, and as such, give rise to warrant, the imposition of a jury of significant punitive damages in an amount to be determined by the jury.

45.    Plaintiffs allege that the conduct of all defendants amounted to gross negligence and/or malice as those terms are defined under Tex. Civ. Prac. & Rem. Code Ch. 41, (§ 41.001, et. seq.), as well as Texas Common Law.

<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

46.    Plaintiffs reallege and incorporate each of the preceding paragraphs, and all subsequent paragraphs.

47. This cause of action arises under the laws of the State of Texas.

48.    The Defendants' conduct acts and omissions, conscious choices, and deliberate indifference to Plaintiffs as alleged throughout this Complaint was intentional and done with reckless disregard for Plaintiffs' health, well-being, safety, and lives.  The Plaintiffs distress was a direct result of the Defendants actions.

49.  Defendants' conduct was extreme, outrageous, atrocious, and intolerable in a civilized community. Defendants knew or should have known that their conduct, acts and omissions, and choices would create a high degree of risk of harm to Plaintiffs. Defendants knew the Plaintiffs' vulnerabilities and susceptibility to harm given their age. Despite this knowledge, Defendants deliberately proceeded to act, and failed to act, in conscious disregard of and with indifference to that risk.

50.    As a proximate cause of Defendants' conduct, Plaintiffs suffered, and continue to suffer severe emotional distress including fear, apprehension, terror, anxiety, panic, worry, stress, night terrors, insomnia, stress induced health effects, post-traumatic stress syndrome, mood disorders, behavioral changes, and loss of security and peace Post-traumatic stress disorder (PTSD).

51. Depression of the depth, intensity, and duration of the mental distress and emotional pain suffered by Plaintiffs is not ordinary, and not what children should have to endure due to the intentional and reckless conduct of the Defendants.

52. As a proximate cause of Defendants' conduct, Plaintiffs suffered, and continue to suffer physical and emotional damages, increased medical and mental health care visits, and loss of enjoyment of childhood.

53. As a proximate cause of Defendants' negligent entrustment, Plaintiffs have suffered and continue to suffer economic losses, including considerable financial expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

54. Plaintiffs reallege and incorporate each of the preceding paragraphs, and all subsequent paragraphs.

55. At all relevant times, Defendants shipped the Hellfire trigger without regard to whom they were shipping and if the shipment was legal.

56. Based on information and belief, Defendants' products were unreasonably dangerous because the equipment they shipped was marketed, and sold so that they could be modified into a military-type automatic weapon.

57. Defendants are liable to Plaintiffs for injuries caused as a result of their shipping the Hellfire trigger without regard for the legality of shipping the item.

58. As a proximate cause of Defendants' conduct, Plaintiffs suffered, and continue to suffer physical and emotional damages, increased medical and mental health care visits, and loss of enjoyment of childhood and economic losses, including considerable financial expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

59. The Defendants have actual or constructive knowledge that it is illegal to ship weapons and modifiers to persons under 18 years of age; to sell inherently dangerous items to young adults, without adequate training, guidance, and/or supervision and/or within the setting of a safe and supervised environment; that the shipment of the Hellfire trigger was illegal and/or the weapon sale was illegal. The Defendants further have actual or constructive knowledge that the young adult civilian consumers it sells to

and/or targets do not have the experience or expertise to appreciate the risk of harm to others if proper warnings, training, guidance, and instruction is not provided.

60.  The Defendant\'s policy, or lack of policy, failed to provide legal and safety guidelines for their employees in regards to screening and shipping items that were illegal, or were illegally sold to minors; nor did they notify the public that these items could not be shipped to certain individuals.

61. As a result of Defendants' policy and procedure defects, when they left the possession and/or control of the product used by the Uvalde school shooter on the day of the school shooting.

62. As a result of Defendants actions, the Plaintiffs suffered, and continue to suffer physical and emotional damages, Post-traumatic stress disorder - PTSD, depression, anxiety, panic attacks, nightmares, flashbacks, intrusive recollective thoughts, phobias, insomnia, increased medical and mental health care visits, and loss of enjoyment of childhood and economic losses, including considerable financial expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

<u>PUNITIVE/EXEMPLARY DAMAGES AS TO THE DEFENDANTS</u>

63. The Defendants' conduct was done with reckless disregard for human life, oppression, and malice. The Defendants were aware of the serious and demonstrable risk of serious bodily injury and death associated with their conduct and that such risks are compounded and worsened by their intentional inaction. With full knowledge of such risks, Defendants proceeded causing Plaintiffs to suffer and sustain severe physical, mental, and emotional harm, increased medical and mental health care visits, and loss of enjoyment of childhood and economic losses, including considerable financial

expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

64. As a proximate cause of the Defendants' conduct, the adult Plaintiffs, parents and guardians, of the children present at the shooting at Robb Elementary School suffered loss of consortium and/or companionship with their children, emotional stress, lost wages on the day of the shooting, lost wages as to time off from work to take their children to medical, psychological, and psychiatric problems, and emotional problems such as loss of sleep, weight gain and/or weight loss, additional time to devote to their children's emotional needs, and will continue to incur these losses and expenses in the future.

65. As a proximate cause of the Defendants' conduct, the children present at the shooting at Robb Elementary suffered emotional stress; physical and emotional damages; increased medical and mental health care visits, and loss of enjoyment of childhood and economic losses, including considerable financial expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

66. The Plaintiffs, that is the adults and their children, suffered non-economic damages, that are, mental or emotional pain or anguish, loss of consortium, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other non pecuniary losses of any kind other than actual damages

67. The Defendant shooter lived at 552 Diaz St., Uvalde, Texas. The grounds of Robb Elementary School are approximately 924 feet away. A school zone means within a distance of 1000 feet from the grounds of a public school. 18 U.S.C. § 921(a)(26).

68. Common carriers provide truck transportation to the general public. U.S. Department of Transportation.

69.   The Plaintiffs assert that the actions of UPS, Federal Express, and Oasis Firearms individually or on combination; jointly and/or severally;   caused and proximately caused the delivery, and the modification of a weapon into the hands of a person likely to act as as a school shooter and who did act as a school shooter, that is Salvador Ramos; and the Defendants abrogated various federal and state laws designed to protect school children from mass shooters.

70.   The Plainitffs suffered   personal injury damages including loss of wage-earning capacity in the future, medical expenses, mental anguish, and damages to the person of each plaintiff.  Plaintiffs specifically aver that their injuries include, but are not limited to, post-traumatic stress disorder, fear, nightmares, extreme anxiety, depression, and insomnia. In all reasonable probability, Plaintiffs will continue to suffer in this manner for a long time into the future, if not for the remainder of their natural lives. The injuries have had a serious effect on bystander mental anguish for the injuries caused to third person, the shooter. The Plaintiffs assert loss of Plaintiffs' former lifestyle, including loss of ability to play sports, have a normal social life, loss of service, increase capacity of the injured spouse to perform household services in to administer to the needs and services of the other spouse.

71. The adult guardians and parents sue for loss of service of the minor child, and the evidence of minors and their capacity to perform services, which may be inferred from the child's personality and family relationships.

72. The  Plaintiffs sue for actual damages to repair the wrongs or to compensate for severe physical injuries.

73. The Plaintiffs sue for "compensatory damages", that is economic and noneconomic damages. The term does not include exemplary damages.

74 The Plaintiffs sue for future damages. "future damages" means damages that are incurred after the date of the judgment, these include medical bills, loss of wages, impaired earning capacity.

75. The Plaintiffs sue for future loss of earnings. "future loss of earnings" means a pecuniary loss incurred after the date of the judgment, including loss of income, wages, or earning capacity, and loss of inheritance.

76. The specific element of damage suffered by each Plaintiff will be fully described during the discovery process. The Plaintiffs preserve the right to plead additional and more specific damages in the future as more facts become known. The above-mentioned elements of damages are those that Plaintiffs have suffered in the past up to the time of trial, but in addition, those that they, in reasonable probability, will continue to suffer in the future.

77. As a direct and proximate result of UPS engagement in an ultra-hazardous activity, negligent actions, grossly negligent actions, and violation of RICO, the parents and children incurred damages, including mental pain and suffering, medical expenses, and possible diminishment of their travel plan=s for travel, lodging, counseling and mental health care throughout their lives in the total amount of $22,500.00 each.

78. The damages for mental anguish and personal injuries for the bystander children including, but not limited to nightmares, loss of appetite, fear and anxiety, headaches, stomach aches, traumatizing fear of returning to school, have and will continue to be experienced by the child and children in the school. The Plaintiffs' victims also have an increased risk of developing long term mental health issues like post-traumatic stress, depression, substance abuse, alcoholism, and suicidal idealization or suicide.

79. In addition to the child's damages, the parents and guardians have suffered from insomnia, mental anguish, anxiety, stress, nervousness, and fear for the safety and future of their child. These damages can be expected to continue into the future.

## DEMAND FOR A JURY TRIAL

80. Plaintiffs respectfully demand a trial by jury.

## SPOLIATION

81. Plaintiffs require and demand that Defendants FedEx and UPS preserve and maintain all evidence pertaining to any claim or defense related to the Uvalde school shooting or other violations made the basis of the Complaint and the alleged damages, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the shipment of the Hellfire trigger and the AR-15. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation inference rule- an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case. That all evidence, material, and those items that are related to the transportation of the Hellfire trigger and the AR-15 to Ramos, which occurred on or before May 24, 2022, be preserved until further notice or such time that these may be examined and reviewed on behalf of the Plaintiffs. Further, that the Defendants are notified that should the Defendant's UPS and/or Federal Express, or their employees or agents, lose, destroy these documents and material, whether preserved electronically or otherwise prior to granting us access to this evidence, that they subject themselves to prosecution for spoliation of evidence, judicial sanctions, and/or adverse judicial actions or instruction by the Court. Watson v. Brazos Elec. Power Corp., Inc., 918S.W.2d 639 (Tex. App. – Waco 1999, writ denied);

San Antonio Press, Inc. v. Custom Machinery, 852 S.W. 2d 64 (Tex. App. – San Antonio 1993, no writ); H.E. Butt Grocery Co v. Bruner, 503 S.W.2d 340 (Tex. Civ. App.-Wace 1975, writ dism'd).

<u>PRAYER FOR RELIEF</u>

82. . WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

A.    All damages alleged in this petition.

B.    Compensatory damages against all Defendants in an amount to be determined at trial;

C.    Punitive/ exemplary damages against the Federal Express and UPS in an amount to be determined at trial;

D.    Personal injuries

E.    Intentional infliction of emotional distress;

F.    Lost wages

G.    Future damages for loss of earning

H.    Loss of consortium

I.    Future damages of loss of income;

J.    Future loss of earnings

K.    Loss of inheritance

L.    Pre and post judgment interest

M.    Reasonable attorney fees as permitted by law

N.    Past medical expenses;

O.    Future medical expenses;

P.    Pain and suffering in the past;

Q.    Pain and suffering in the future;

R.    Mental anguish in the past;

S.    Mental anguish in the future;

T.    Bystander damages;

U.    Lost wages;

V.    Prejudgment interest;

W.    Post-judgment interest;

X.    Exemplary damages;

Y.    Loss of enjoyment in life in the past;

Z.    Loss of enjoyment in life in the future;

ZZ.   Other reasonable consequential damages.

.   ZZZ.  Such other and further relief to which the Plaintiff's may be entitled.


October 17,  2024.

                                        Respectfully submitted,
                                        By: */s/Mark A. Di Carlo*
                                        Mark A. Di Carlo, PLLC
                                        722 Elizabeth Street
                                        Corpus Christi, Texas 78404
                                        Telephone: (361) 888-6968
                                        Facsimile: (361) 887-6410
                                        SBN: 05812510
                                        Service Email:
                                        markdicarlo722@gmail.com
                                        SBN: 05812510
                                        FBN:  6839



                                        ATTORNEY FOR THE PLAINTIFFS