IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| PATRICIA ALBARADO, et al, § <br> § <br> Plaintiffs, § <br> § <br> vs. § <br> § <br> UNITED PARCEL SERVICE, INC. a/k/a and d/b/a as § <br> UPS; FEDERAL EXPRESS CORPORATION a/k/a § <br> and d/b/a as FEDEX CORPORATION § <br> § <br> Defendants § | Civil Action No.: 2:24-cv-00105-AM |

**DEFENDANT FEDERAL EXPRESS CORPORATION'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**

Defendant Federal Express Corporation ("FedEx") files this Reply to Plaintiffs' Response to FedEx's Motion to Dismiss (Dkt. No. 36) (the "Response") for the purpose of responding to the few arguments presented in the Response that appear to address the issues set forth in FedEx's Motion to Dismiss.[1]

**REPLY**

FedEx hoped that Plaintiffs' might take the opportunity to clarify their very confusing pleading and their claims in responding to the Motion to Dismiss. Unfortunately, Plaintiffs chose the opposite approach. In fact, among the multitude of personal attacks, the Response presents almost no argument substantively explaining why this case should not be dismissed for the reasons

---

[1] Plaintiff's filing includes: 1) an objection and motion to strike FedEx's motion to dismiss; 2) a motion for judgment on the pleadings; and 3) a response to FedEx's motion to dismiss. Because the first two components of the filing are new motions for relief, FedEx will separately respond to those requests. This Reply is limited to (as best as FedEx can discern) the portions of the Response that seem to actually respond to the Motion to Dismiss.

set forth in the Motion to Dismiss. Accordingly, FedEx files this brief reply to further show why the Court should dismiss this entire matter as to FedEx.[2]

A.   **The ADA Preempts All of Plaintiff's Claims**

On the topic of ADA preemption, the Response is confined to a few, irrelevant arguments. First, Plaintiffs claim the ADA cannot bar their claims "because the ADA has not been ruled on by this court to apply." (Dkt. No. 36 at ¶ 13). That argument makes no sense because the ADA exists and applies regardless of whether this Court has yet to apply it here—the entire point of the Motion to Dismiss.

Second, Plaintiffs assert—without any supporting authority—that the ADA does not apply to the claims in this case because FedEx is not an airline. As outlined at length in FedEx's Motion, the opposite is undisputably true as confirmed by numerous courts. *See, e.g., Headstream,* 2023 U.S. App. LEXIS 2680, at *6; *Rodger Blanco v. Federal Express*, 741 Fed. Appx. 587, 588 n.1, (10th Cir. 2018); *Samtech Corp. v. Fed. Express Corp.,* No. H-03-0024, 2004 U.S. Dist. LEXIS 27123, at * 4 (S.D. Tex. May 28, 2004); *Cash Am. Pawn, L.P. v. Federal Express Corp.,* 109 F.Supp.2d 513, 515 (N.D. Tex. 2000); *Federal Express Corp. v. United States Postal Serv.,* 55 F.Supp.2d 813, 817 (W.D. Tenn. 1999); *Breitling U.S.A, Inc. v. Federal Express Corp.,* 45 F.Supp.2d 179, 181 (D. Ct. 1999). Indeed, in case there was any doubt on this issue, the Motion to

---

[2] Among the rhetoric contained in the Response, in a single sentence, Plaintiffs request sanctions. This request is made, apparently, because Plaintiffs' counsel is upset that FedEx did not file an answer, instead filed a motion to dismiss and did not respond to the already-denied and baseless motion for default. (Dkt. No. 36 at ¶ 10). The Response also says Plaintiffs will later file a Rule 11 motion for sanctions but, in another section, states that Plaintiffs "moves [sic] for sanction [sic] based upon the procedures to date of the 'Federal Express Corporation.'" (Response at ¶ 46). The Court is not required to address such conclusory requests. *See Conghua Yan v. State Bar of Texas,* No. 4:23-cv-00758-P, 2023 U.S. Dist. LEXIS 222554, at *4-8 (N.D. Tex. Dec. 13, 2023). Moreover, Plaintiffs' counsel's failure to understand or comply with basic federal procedure does not constitute a basis for sanctions as to FedEx. There is also no way FedEx could productively respond to these requests because they do not identify what sanctions are sought, explain any rule or other violation that could justify sanctions, or provide any basis for sanctions.

Dismiss included a copy of the certificate of authority granted by the U.S. Department of Transportation showing that FedEx, in fact, is still an ADA-qualified airline.

Third, the Response argues—again without supporting authority—that because Plaintiffs did not plead that the gun used in the shooting was exclusively shipped by airplane and because ground transportation might have been used as part of its shipment, this somehow means the ADA does not apply. This is just plain wrong. Obviously, a variety of kinds of ground transportation are used in getting shipments to and from airports for packages to be shipped on airplanes. If the ADA only applied where packages were shipped exclusively by air, there would not be a single case finding a claim was barred by the ADA. The ADA analysis has nothing to do with the modes of transportation used to ship a package. Rather, as explained in FedEx's Motion, the ADA analysis is based on the claims asserted and whether those claims are related to the prices, routes or services of any airline. *See* 49 U.S.C. §§ 41713(b)(1) and (b)(4)(A) (". . . a State [or] political subdivision of a State, . . . may not enact or enforce a law, regulation, or other provision having the force or effect of law **related to a price, route or service of an air carrier** that may provide air transportation under this subpart.") (emphasis added); *see also Brown v. United Airlines, Inc.,* 720 F.3d 60, 63 (1st Cir. 2013) (explaining that the ADA preemption question "asks whether the claim is sufficiently 'related to a price, route, or service of an air carrier.'").

The Response does not directly address Plaintiff's negligence, negligence per se, gross negligence and intentional infliction of emotional distress claims, or present any argument that such claims are not the kinds of claims subject to ADA preemption. The Response also does not dispute that all of Plaintiffs' causes of action arise out of their complaints about the manner in which FedEx allegedly shipped the subject gun. Indeed, one of the only parts of the Plaintiffs' live pleading that is clear is the allegation that FedEx shipped the AR-15 used by the shooter. (Dkt.

No. 25-2 at pgs. 8-10). Even the Response embraces and admits these allegations are made in Plaintiffs' live pleading. (Dkt. No. 20 at ¶ 54). Plaintiffs' claims are thus necessarily related to the service of FedEx—an ADA-qualified air carrier—because all of their complaints are based on FedEx's alleged handling of the AR-15 shipment and things Plaintiffs allege FedEx should have done while handling that shipment, including checking Ramos's age, and verifying the gun was being delivered to a qualified buyer at a qualified location. (*See* Dkt. No. 22-1 at pgs. 3-18). As a result, the claims are preempted by the ADA, regardless of whether a land vehicle had something to do with some part of the shipping of the gun at some point in time.[3]

Lastly, Plaintiffs blanketly assert that all state tort actions alleging personal injury are not preempted by the ADA. This argument is also wrong and the analysis not that simple. Plaintiffs rely almost entirely on *Hodges v. Delta Airlines*, which involved a bodily injury claim that occurred when a passenger opened an overhead luggage compartment on a Delta plane and bottles of rum fell onto Frances Hodges. 44 F.3d 334, 335 (5th Cir. 1995). *Hodges* did not hold that all tort claims asserting any kind of personal injury-type damages are exempt from the ADA. Instead, the *Hodges* court merely found that nothing in the language of the ADA nor its legislative history indicated that Congress intended the ADA to "displace the application of state tort law to personal physical injury inflicted by aircraft operations." *Id.* at 338. Important to the court's analysis was Hodges' allegation that Delta was negligent in allowing the case of rum to be stowed in an overhead bin, which had no relation to airline's core service of transporting passengers. *Id.* at 340. The *Hodges* court was clear that "this general vindication of state tort claims arising from the

---

[3] One of the most egregious parts of the Response is the completely false statement that "it was represented to counsel for the Plaintiffs that Federal Express had shipped the AR-15 used…" (Dkt. No. 36 at ¶ 17). To support this statement, Plaintiffs cite "Exhibit A" to the Response. That exhibit is an email from FedEx's former counsel simply agreeing to waive service of the then-live pleading. Nowhere in that email is there anything that can even remotely be construed to say that FedEx shipped the gun at issue in this case.

maintenance or operation of aircraft *does not* extend to all conceivable state tort claims." *Id.* at 339 (emphasis original).

*Tobin v. Fed. Express Corp.,* is more analogous because that case involved claims for invasion of privacy, intentional infliction of emotional distress and negligence based on FedEx's mislabeling of a package, which resulted in its misdelivery to Maryangela Tobin. 775 F.3d 448, 449 (1st Cir. 2014). Upon receipt of the package, Ms. Tobin and her daughter opened it to find two bags of marijuana. *Id.* at 450. After the police were called and a man came to Ms. Tobin's door looking for the package, Ms. Tobin and her minor daughter claimed they suffered fear and anxiety resulting in symptoms for which they sought damages. *Id.* The *Tobin* court, citing *Hodges,* confirmed that "service" under the ADA is broad and included FedEx's mislabeling and misdelivery of the package. *Id.* at 453. ("Stripped of rhetorical flourishes, the plaintiff's common law claims all depend on…FedEx's package handling, address verification, and delivery procedures."). As a result, the claims were related to FedEx's services and preempted by the ADA. *Id.* at 456.

The kinds of bodily injury claims that courts have held are not preempted are based on factual scenarios that have a tenuous, remote or peripheral connection to the airlines' prices, routes and services, such as where a passenger was injured by a beverage cart, luggage fell from an overhead bin or a passenger tripped on a bag being moved by a flight attendant. *See Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1261 (9th Cir. 1998). Those kinds of peripheral amenities are not at issue in this case. A proper ADA preemption analysis is based on the nature of the particular claim advanced in the case at hand. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1433 (7th Cir. 1996). Here, Plaintiffs' claims all relate directly to the core service provided by FedEx—shipping of packages. Plaintiffs' claims are not based on

some tenuous, remote or peripheral amenity provided by FedEx and, therefore, fall squarely within ADA preemption.

### B. Plaintiffs Failed to Establish the Criminal Statutes Cited in Their Pleading Can Form the Basis of a Negligence Per Se Claim

When Plaintiffs sought to amend their pleading, they gave the impression they were amending to bring a new, separate cause of action for alleged violations of Texas Penal Code § 46.14. (Dkt. Nos. 21, 22, 23 & 25 at ¶7) ("Plaintiff's counsel primarily made one primary substantive change in the Complaint, that is citing Texas Penal Code § 46.14 which prohibits the firearm smuggling…This *cause of action* was pled previously, without a citation to the Texas Penal Code…") (emphasis added). The Response appears to indicate that Plaintiffs meant to assert the statute (and others) as the basis for a negligence per se cause of action. Regardless, if Plaintiffs are attempting to bring a stand-alone claim for alleged violations of any of the criminal statutes cited in their pleading, Plaintiffs are legally unable to do so as discussed in the Motion to Dismiss. If Plaintiffs are relying on those statutes to provide the duty of care for a negligence per se cause of action, this too fails.

The Texas Supreme Court has mandated that, before finding a criminal statute can serve as the basis for a negligence per se claim, the following factors must be considered: 1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common law duty; 2) whether the statute puts the public on notice by clearly defining the required conduct; 3) whether the statute would impose liability without fault; 4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and 5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute. *Perry v. S.N.,* 973 S.W.2d 301, 309 (Tex. 1998). The Response

addresses none of these factors, and presents no argument that any of the factors weigh in favor of a finding that the criminal statutes cited support a negligence per se claim. In fact, the Response admits "[t]here is no argument regarding adopting the standard of care under standards alleged by the Plaintiffs in the Plaintiffs' Second Amended Complaint." (Dkt. No. 36 at ¶ 57). Plaintiffs also cite no cases holding that any of the referenced statutes have been found by any court to support a negligence per se claim. As a result, the Court should dismiss Plaintiffs' claims based on the criminal statutes cited in Plaintiffs' live pleading, whether as stand-alone causes of action or a part of Plaintiffs' negligence per se claim.

### C. The Response Confirms Plaintiffs' Exercised No Diligence in Obtaining Service on FedEx

Finally, the Response confirms that the Adult Plaintiffs' claims are all barred by Texas' two-year statute of limitations because Plaintiffs did nothing to serve FedEx with the lawsuit for at least nine (9) weeks. On this topic, the Response consists mostly of hyperbole and ad hominem attacks, and sporadically mentions conclusory arguments on everything from corporate veil piercing and equitable tolling to the relation back doctrine. None of this makes any difference.

The undisputed fact is that this lawsuit was filed on May 24, 2024, the day the applicable statute of limitations expired. (*See* Dkt. No. 1-1). As to FedEx, the suit originally named an incorrect entity but, for purposes of ruling on the Motion to Dismiss, the Court can assume that all of Plaintiffs' pleading amendments relate back to the original May 24, 2024 filing. The issue then is whether Plaintiffs exercised due diligence in serving any FedEx entity with any version of the lawsuit after it was filed. Simply filing the suit on time is not enough. *Prolux v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007).

Plaintiffs had the burden to present the Court with evidence that they undertook diligent effort to serve FedEx after the suit was filed, and to explain every lapse in effort or period of delay.

7

*Id.* at 216. The Response includes no evidence at all that explains what Plaintiffs did to serve FedEx after the suit was filed. To the contrary, the emails attached to the Response establish that Plaintiffs did nothing to try to serve any FedEx entity with the suit until July 26, 2024. (*See* Dkt No. 36-2). In other words, the record shows that the lawsuit was filed on May 24, 2024, but that Plaintiffs did nothing to try to serve FedEx (albeit the wrong entity) with that lawsuit for nine (9) weeks until July 26, 2024. It was only then that Plaintiffs asked FedEx's prior counsel to sign a Waiver of the Service of Summons, but there is no evidence Plaintiffs did anything in the meantime to serve FedEx.

When a plaintiff offers no valid excuse for lack of service or if the lapse in time, along with plaintiff's actions or inaction, conclusively negate diligent service, the issue of limitations may be determined as a matter of law. *See Ashley v. Hawkins,* 293 S.W.3d 175, 181 (Tex. 2008); *Hansler v. Mainka*, 807 S.W.2d 3, 5 (Tex. App.—Corpus Christi 1991, no writ). The Adult Plaintiffs' claims are all barred by the applicable two-year limitations period because they failed to diligently serve this lawsuit after it was filed.

## II.  CONCLUSION AND PRAYER

FedEx requests that this Motion to Dismiss be granted and that all of Plaintiffs' claims be dismissed. FedEx requests all further and other relief in law and equity to which it is justly entitled.

Respectfully submitted,

*/s/ Jason R. Bernhardt*
Jason R. Bernhardt
Texas Bar No. 24045488
Federal Express Corporation
3620 Hacks Cross Road
Building B - 3rd Floor
Memphis, Tennessee 38125
Telephone: (901) 434-3213
Facsimile: (901) 434-9279
jasonbernhardt@fedex.com

>James G. Ruiz
>Texas Bar No. 17385860
>jruiz@winstead.com
>Elin Isenhower
>Texas Bar No. 24104206
>eisenhower@winstead.com
>600 W. 5th Street, Suite 900
>Austin, Texas 78701
>(512) 370 2800
>(512) 370 2850 (fax)
>
>***Counsel for Federal Express Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2024, a true and correct copy of this reply was electronically served on all counsel of record via the Court's CM/ECF system.

> */s/ Jason Bernhardt*
> Jason Bernhardt

9