IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| PATRICIA ALBARADO; <br> ERICA BARRERA, Individually <br> and ANF of D.R., Minor, <br> MICHAEL BROWN, Individually <br> And ANF of V.B., Minor, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED PARCEL SERVICE, INC. <br> A.K.A. and DBA as UPS; <br> FEDEX CORPORATION <br> A.K.A. and DBA as FedEx, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:24-cv-00105-AM |

**DEFENDANT UNITED PARCEL SERVICE, INC.'S REPLY
IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT WITH PREJUDICE**

INTRODUCTION

To try to avoid preemption, Plaintiffs' opposition to UPS's Motion to Dismiss makes a series of disjointed arguments that misstate the law, Plaintiffs' own allegations, and UPS's arguments. What the Opposition does not do is deny that Plaintiffs seek to impose duties on interstate carriers not only to screen package contents but also to investigate the people receiving packages to make sure they will not cause harm to others. Carriers are not in position to screen individual package contents and investigate package recipients, and imposing duties like the ones Plaintiffs suggest would literally grind interstate commerce to a halt. It is for this reason that Congress enacted the FAAAA to preempt the application of state law to carriers where it "relates

to" carriers' services, prices, or routes. Plaintiffs' claims make express reference to UPS's services and, as a result, are preempted under controlling Supreme Court authority. In addition, Plaintiffs' claims seek to rely on state law to micromanage how UPS must handle and deliver packages in Texas, precisely the "significant impact" the FAAAA forbids. The Court should dismiss Plaintiffs' claims because they are preempted, *either* because the claims make express reference to UPS's services or because they would have a significant impact on them.

Plaintiffs also fail to refute UPS's arguments that all of their claims fail as a matter of law for reasons independent of preemption. As to negligence, Plaintiffs do not identify any valid source of the duty they seek to impose on UPS or respond to UPS's argument that Plaintiffs have not plausibly alleged facts to support causation. As to their IIED claims, Plaintiffs contend that their claim is a "gap filler," that should survive solely because Plaintiffs failed to articulate any other viable tort claim against UPS. Plaintiffs misunderstand Texas law. They still must state a cognizable IIED claim to survive a motion to dismiss, which is something Plaintiffs have not done.

Plaintiffs have not identified a single claim that can survive UPS's Motion. Accordingly, UPS respectfully urges the Court to dismiss all of Plaintiffs' claims, with prejudice.

## ARGUMENT[1]

## I.    FEDERAL LAW PREEMPTS ALL OF PLAINTIFFS' CLAIMS

Plaintiffs incorrectly argue that UPS seeks a ruling that it is "immun[e]" from all liability—under any law and for any reason—simply because it is a motor carrier. (Opp'n ¶ 39.) In reality,

---

[1] Plaintiffs argue that UPS's Rule 12(b)(6) motion is untimely (Opp'n ¶ 3), but they are wrong. UPS answered the original complaint in July 2024 (ECF Nos. 1 & 3). Plaintiffs thereafter obtained leave to amend their complaint several times. UPS's Motion is directed at the Second Amended Complaint (ECF No. 24). UPS timely filed the Motion less than 14 days from when Plaintiffs filed the SAC. Fed. R. Civ. P. 15(a)(3). While Plaintiffs style their response, in part, as a motion to strike UPS's motion as untimely, their request lacks merit.

UPS asks the Court to apply the express language of the FAAAA to preempt state-law claims that, as Plaintiffs have articulated them, would require motor carriers to identify certain items traveling through the State of Texas and intercept them based on the receiver's criminal intentions and/or incapacity to use the item without causing harm. In this case, Plaintiffs focus on trigger devices and AR-15 rifles, but their logic extends to any number of articles. Given that carriers are not firearm or components experts, much less experts on the innumerable items that travel in interstate commerce, and lack a direct relationship with package recipients, it is difficult to imagine how carriers would be able to accomplish all that Plaintiffs demand. It is impossible to imagine carriers doing so without a significant impact on package handling and delivery procedures. Such claims relate to UPS's services, as well as the prices it charges and the routes it takes, within the meaning of the FAAAA *and* would have a significant impact on them.

The Court need look no further than the Supreme Court's holding in *Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364 (2008), to grant UPS's Motion. What Plaintiffs seek to do here is no different from what the State of Maine sought to do in *Rowe*. While Plaintiffs attempt to distinguish *Rowe* by noting that they rely on common law claims while *Rowe* dealt with a statute (Opp'n ¶¶ 37, 48), the Supreme Court has answered this question, holding in *Northwest, Inc. v. Ginsberg* that the preemptive reach of the ADA (and therefore the parallel provision in the FAAAA) extends to common law claims brought by private plaintiffs. 572 U.S. 273, 284 (2014). Similarly, Plaintiffs try to distinguish the Supreme Court's holdings in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), and *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), by limiting those cases to their specific facts (to argue preemption applies *only* to claims involving fare advertising or frequent flyer miles) but ignore the Court's actual holding. As *Morales* made clear, the ADA (and thus the FAAAA) must be read expansively according to

its plain text. 504 U.S. at 383-84 (the provision's "broad" "ordinary meaning" "express[es] a broad pre-emptive purpose" and thus a state law "having a connection with or reference to airline 'rates, routes, or services'" falls within the scope of "relating to" as used in the ADA).

Second, Plaintiffs argue that their claims would impose no burden on UPS and fault UPS for not, at the pleading stage, introducing proof of the burden it would face. (Opp'n ¶¶ 19, 56.) The fact that Plaintiffs' claims make express reference to UPS's services is enough to be preempted under Supreme Court precedent, regardless of the burden on UPS. *See Rowe*, 552 U.S. at 370-71; *see also Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 436 (1st Cir. 2016) (synthesizing *Rowe* to instruct that a state law claim "is preempted if it expressly references, *or has* a significant impact on, carriers' prices, routes, or services) (*citing Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 17-18 (1st Cir. 2014)) (emphasis added). Furthermore, however, even where claims do not make express reference to services, prices, or routes, courts consider whether there nevertheless would be a significant impact on carriers for FAAAA preemption purposes as a matter of logic, without requiring carriers to submit proof. *See, e.g.*, *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 82 n.14 (1st Cir. 2006) ("The cases in this area have looked to the logical effect that a particular scheme has on the delivery of services or the setting of rates and have not required the presentation of empirical evidence."). Requiring UPS to inspect packages and investigate recipients obviously would have a significant impact on the services UPS provides, the prices it charges, and potentially also the routes it travels, as the Court in *Rowe* recognized. *Rowe*, 552 U.S. at 373 (concluding that requiring carriers to inspect packages sent by certain shippers and check recipients' licensing would have a significant impact).

Third, Plaintiffs try to argue (1) that they merely seek to enforce federal law, as set forth in parts of the Gun Control Act, 18 U.S.C. §§ 921 and 922, through a negligence per se claim and

(2) that the FAAAA cannot preempt a federal statute. That is a fiction. Even as to their negligence per se claim,[2] Plaintiffs invoke *state* law and policy to supply a private right of action unavailable to private citizens under the Gun Control Act (or the Texas Penal Code). Plaintiffs thus rely on state law, not federal law. Even then, Plaintiffs have not actually alleged that UPS violated sections 921 or 922, or any federal law. They allege that UPS transported a trigger device, but neither section makes it unlawful for a carrier to transport a trigger device or imposes any restrictions on who may receive one.[3] Nor do Plaintiffs allege (or even argue) otherwise. In other words, the "duty" Plaintiffs seek to impose on carriers through this lawsuit does not come from federal law or, as set forth in Section II, *supra* at 7-9, from *any* source of law UPS has been able to locate.

Next, Plaintiffs argue that Congress did not intend to preempt entire areas, like public health and safety, traditionally regulated by states as part of their police powers.[4] *Rowe* disposes

---

[2] Plaintiffs appear to concede that their common law negligence and IIED claims, which do not even pretend to rely on a standard of care set by federal law, are preempted.

[3] While Plaintiffs try to modify their complaint mid-argument to assert that *UPS* transported a rifle (as opposed to FedEx), that is not something Plaintiffs may do in an opposition brief. *Torch Liquidating Tr. ex rel. Bridge Assocs., LLC v. Stockstill*, No. CIV.A. 07-133, 2008 WL 696233, at *8 (E.D. La. Mar. 13, 2008) ("Plaintiff cannot in its briefing attempt to read into the complaint allegations that were not pled nor change the argument once learning the opposing side's position."). In any event, changing the allegations does not help. Plaintiffs do not explain how a carrier violates sections 921 or 922 by transporting a firearm between two federal firearms licensees, which is what Plaintiffs allege happened here. In reality, for an interstate shipment, federal law generally requires that licensees ship firearms to other licensees, rather than to unlicensed persons. *See, e.g.*, 18 U.S.C. § 922(a)(2). To the extent Plaintiffs allege one licensee failed to complete paperwork in violation of section 922(c)(1), they seek to extend requirements Congress expressly imposed on *federal firearms licensees* to carriers. Even accepting Plaintiffs' allegations as true and even assuming section 922(c)(1) applies, it does not impose, and cannot plausibly be read to impose, any obligations that either carrier is alleged to have violated.

[4] For support, Plaintiffs cite one case from an Indiana state court, *Kuehne v. United Parcel Service, Inc.*, 868 N.E.2d 870 (Ind. Ct. App. 2007). *Kuehne* does not help Plaintiffs. There, the court stopped short of holding that the FAAAA preempted claims based on injuries the plaintiff sustained from a slip-and-fall over a package left by her door. In reaching its conclusion, the court emphasized that the result would be different had the plaintiff's claims sought to regulate UPS's

of Plaintiffs' argument. The Court rejected that argument, finding that while the State had an important public health objective in preventing deliveries of tobacco products to minors, that objective could not override the express preemptive scope of the FAAAA. *Rowe*, 552 U.S. at 374-75. The Court noted that the FAAAA "explicitly lists a set of exceptions (governing motor vehicle safety, certain local route controls, and the like)," and therefore that courts may not infer additional exceptions, such as exceptions for public health. *Id.* at 374. *Rowe* thus precludes the argument Plaintiffs make here.

Plaintiffs' other arguments are equally meritless. For example, Plaintiffs attempt to incorporate entire paragraphs of their opposition to FedEx's motion to dismiss (Opp'n ¶ 4), which is improper. Civil Local Rule CV-7(C) & (D) (requiring parties to cite supporting authority within their motion, not a separate brief, and setting maximum page limits). Those arguments, including that the ADA exempts all personal injury claims and that a package must travel solely via airplane for the ADA to take effect, lack legal merit. To be sure, garden variety personal injury claims have been held not preempted where they are not sufficiently related to the carrier's prices, routes or services. *See, e.g.*, *Hodges v. Delta Airlines*, 44 F.3d 334, 339 (5th Cir. 1995) (holding that claims from injury sustained when rum case fell from aircraft overhead bin were insufficiently related to air carrier's services (and rather related to maintenance or operation of the aircraft) but clarifying that ruling did "not extend to all conceivable state tort claims"). But, as shown in the Motion, courts have not allowed tort claims to proceed (including in the personal injury context) where the claims are based directly on the transportation service provided by the carrier. (*See* Mot. at 12-14; FedEx Reply, ECF No. 42 at 3-6.) *See also Tobin v. Fed. Express Corp.*, 775 F.3d 448, 456 (1st

---

procedures *prior* to delivery, as Plaintiffs claims seek to do here. *Id.* at 876 ("It is apparent to us that the pre-delivery processes of UPS certainly relate to its services and that the FAAAA provisions should control in those instances.").

Cir. 2014) (holding tort claims stemming from FedEx's mis-delivery of illegal drugs to plaintiff's address were preempted by ADA because "where the duty of care alleged drills into the core of an air carrier's services and liability for a breach of that duty could effect fundamental changes in the carrier's current or future service offerings, the plaintiff's claims are preempted."). As the court held in *Rockwell v. United Parcel Serv., Inc.*, No. 2:99-CV-57, 1999 WL 33100089 (D. Vt. July 7, 1999), claims seeking to challenge UPS's "intake and delivery protocol" are "beyond purview, inherently a claim against UPS's services which is . . . preempted." *Id.* at *2.

Plaintiffs also take issue with a case UPS cited from a court in this district (Mot. at 14) applying FAAAA preemption to common law tort claims. Plaintiffs distinguishes that case on the basis that the defendant was a broker, whereas UPS is a motor carrier. (Opp'n ¶¶ 69-73.) That is a distinction without a difference because the FAAAA applies to motor carriers *and* brokers. The point—which Plaintiffs do not refute—is that courts routinely apply FAAAA preemption to common law tort claims (including personal injury claims) that seek to regulate the core aspects of a motor carrier or a broker's transportation service, as Plaintiffs' claims do here. Finally, Plaintiffs suggest that, as third-party beneficiaries, they can enforce the contract between UPS and its customers. (*Id.* ¶¶ 54-55.) But Plaintiffs do not assert contract claims, allege UPS breached its contract, or otherwise connect this thought to a coherent argument against preemption.

For all of the reasons set forth in UPS's motion, the Court should dismiss Plaintiffs' claims as preempted by the FAAAA.

## II. PLAINTIFFS' CLAIMS ALL FAIL AS A MATTER OF LAW, INDEPENDENT OF PREEMPTION

Plaintiffs also do not refute that they failed, as a matter of law, to state viable negligence and IIED claims, for reasons independent of preemption.

As to duty, Plaintiffs do not have a coherent response to UPS's Motion. Plaintiffs make a general argument that UPS fell short of a duty of care set forth in the Gun Control Act but fail to support this argument with a single factual allegation to show how this could be true. They do not, for example, point to any specific part of the statutory scheme *UPS* is alleged to have violated or cite a single case holding that a motor carrier owes a duty of care akin to the one Plaintiffs seek to impose here. The only argument Plaintiffs make is that carriers may know or guess that a package contains a firearm or component based on the name of the shipper (i.e., UPS's customer) or if the shipper discloses the contents of a package.[5] But Plaintiffs fail to support the necessary inferential leap that must follow—that a carrier has a duty to inspect packages and investigate recipients to try to discover their intentions, qualifications, and mental health status—with *any* supporting authority. There is none, and for a reason. As to full firearms, Congress assigned the solemn task of screening firearm purchasers to federal firearms licensees, not to carriers. *See, e.g.*, 18 U.S.C. § 922(t). And as to devices like the one UPS is alleged to have transported, Congress does not require licensees to screen purchasers and it makes no sense that carriers, who are not parties to the transaction between a buyer and seller, could nevertheless hold such a duty under state law.

Plaintiffs similarly fail to refute UPS's arguments concerning causation. They argue only that, based on the nature of a trigger device or an AR-15 rifle (which UPS is not alleged to have carried), by definition, a horrendous attack like the one at Robb Elementary was foreseeable to UPS. But, again, Plaintiffs present no supporting authority for that proposition and no response to the cases UPS cited that support the opposite conclusion. (Mot. at 17-19.)

---

[5] Contrary to Plaintiffs' assertion (Opp'n ¶ 93), under federal law, shippers are supposed to give carriers notice that a package contains a firearm when the recipient is *not licensed* (i.e., not the fact pattern Plaintiffs allege here). *See* 18 U.S.C. § 922(e). There is no comparable disclosure obligation in the Gun Control Act for firearm parts, or firearms addressed to a licensee.

Finally, as to their IIED claim, Plaintiffs argue only that the claim is meant to serve as a gap-filler under Texas law and may not supplant or duplicate other statutory or common law remedies. (Opp'n ¶ 99.) According to Plaintiffs, they should be allowed to press their IIED claim, regardless of its legal merit, solely because they were unable to assert any other viable claims. (*Id.*) That is not the law. Plaintiffs must still state a viable IIED claim in its own right. For the reasons set forth in UPS's motion—none of which Plaintiffs even try to refute—they have not done so. (Mot. at 19-20.)

## III. THE COURT SHOULD DISMISS THE SAC WITHOUT LEAVE TO AMEND

As set forth in the Motion, UPS respectfully asks the Court to dismiss the SAC with prejudice. The Court has previously given Plaintiffs leave to amend their complaint numerous times and yet they still fail to allege viable claims. Moreover, Plaintiffs allude to legal theories they would like to try asserting, if given leave to amend, such as basing a negligence per se claim against carriers based on a standard of care set forth in Texas child abuse statutes. (Opp'n ¶ 53.) That example is illuminating. Such a claim would not survive a Rule 12 motion, whether based on FAAAA preemption or the Rule 12(b)(6) standard. UPS respectfully urges the Court to dismiss Plaintiffs' claims without leave to amend, given the Court has already afforded Plaintiffs multiple attempts to present viable claims and the futility of future amendments. *See, e.g.*, *Chavez v. First Nat'l Bank of S. Afr.*, No. DR-15-CV-065-AM/VRG, 2015 WL 13036708, at *4 (W.D. Tex. Nov. 24, 2015) (dismissing complaint with prejudice where allowing further amendment would be futile); *Ozon v. Bank of Am., N.A.*, No. DR-15-CV-057-AM-VRG, 2015 WL 11545020, at *6 (W.D. Tex. Nov. 9, 2015) (finding it appropriate to dismiss plaintiff's amended complaint with prejudice after the plaintiff had been afforded multiple opportunities to plead its claims and failed to cure pleading deficiencies).

## CONCLUSION

For the reasons set forth in UPS's motion and herein, the Court should grant UPS's Motion to Dismiss in full and with prejudice.

Dated: December 2, 2024                    Respectfully Submitted,

*/s/ Lauren A. Valkenaar*
Lauren A. Valkenaar
Texas State Bar No. 24088570
lvalkenaar@valkenaarlaw.com
Dylan R. Fedderman
Texas State Bar No. 24105851
dfedderman@valkenaarlaw.com
VALKENAAR PLLC
7898 Broadway, Suite 120
San Antonio, Texas 78209
Telephone: (210) 239-0321
Facsimile: (210) 634-2566

Caitlin Sinclaire Blythe
CA State Bar No. 265024
cblythe@mofo.com
MORRISON & FOERSTER LLP
425 Market St.
San Francisco, California 94105
Telephone: (415) 268-6463
Facsimile: (415) 268-7522

*Attorneys for Defendant*
*United Parcel Service, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF/CM e-filing system to all counsel of record via e-Filing on this 2nd day of December 2024.

/s/ Lauren A. Valkenaar
Lauren A. Valkenaar
