FILED

SEP 29 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | | |
|---|---|---|
| **PATRICIA ALBARADO, et al., Plaintiffs,** | § § § | |
| **v.** | § § | **Civil Action No. DR-24-CV-000105-AM** |
| **UNITED PARCEL SERVICE, INC. A.K.A. and DBA as UPS; FEDEX CORPORATION A.K.A. and DBA FedEx, Defendants.** | § § § § § § | |

## ORDER

On May 24, 2022, a tragic mass shooting occurred at Robb Elementary School in Uvalde, Texas, where a lone teenage gunman opened fire on students and staff. (ECF No. 24 at 3.) The assailant allegedly used an AR-15 rifle outfitted with a Hellfire Gen 2 trigger device. According to the Plaintiffs, the rifle and trigger device were shipped to the shooter by the Defendants FedEx Corporation ("FedEx") and/or United Parcel Service, Inc. ("UPS"). (*Id.* at 2, 4.) The Plaintiffs bring this action to hold FedEx and UPS liable for damages arising from their alleged transport of these items. Specifically, the Plaintiffs assert claims of negligence, gross negligence, negligence per se, negligent entrustment, and intentional infliction of emotional distress, and request compensatory and punitive damages. (*Id.* at 4, 10, 18–21.)

Currently before the Court are: (1) Fed Ex's Motion to Dismiss [ECF No. 29]; (2) UPS's Motion to Dismiss [ECF No. 31]; (3) Fed Ex's Motion to Join Partially to UPS's Motion to Dismiss [ECF No. 32]; (4) the Plaintiffs' Motions to Strike [ECF Nos. 36, 44]; and (5) the Plaintiffs' Motion for Judgment on the Pleadings [ECF No. 36]. For the reasons set forth below, the Plaintiffs' Objections, Motions to Strike, and Motion for Judgment on the Pleadings are **DENIED**, and the Defendants' respective Motions to Dismiss are **GRANTED.**

## I. BACKGROUND

### *A. Alleged Facts*

On May 24, 2022, Salvador Ramos ("Ramos") entered Robb Elementary School in Uvalde, Texas, and carried out a mass shooting that lasted approximately 77 minutes, ending only when Ramos was killed by law enforcement. (ECF No. 24 at 3–4.) During the attack, Ramos carried a Daniel Defense AR-15 rifle, which he modified with a Hellfire Gen 2 trigger system—a device capable of enabling the rifle to fire in fully automatic or semi-automatic mode. (*Id.* at 4.) The Hellfire Gen 2 trigger system installs within the pistol grip of an AR-15 and enables firing at a rate of approximately 350 rounds per minute. (*Id.* at 15.)

Ramos purchased both the AR-15 and the Hellfire trigger device through online merchants. (*Id.* at 2, 6.) The AR-15, purchased from Daniel Defense on an unknown date, was shipped to Oasis Firearms by FedEx, and was picked up by Ramos on May 17, 2024. (*Id.* at 8.) The Hellfire trigger device was purchased from an unknown online merchant on an unknown date and shipped directly to Ramos by UPS on an unknown date. (*Id.* at 10.)

### *B. Procedural History*

On May 24, 2024, the Plaintiffs filed a complaint against UPS and FedEx in the 225th District Court of Bexar County, Texas, asserting claims of gross negligence and intentional infliction of emotional distress ("IIED"). (ECF No. 1 at Ex. 1.) The Defendants removed the action to the San Antonio Division of the Western District of Texas on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1441(a).[1] (ECF No. 1.) After multiple amendments and other failed attempts to amend, the operative pleading in this case is the Plaintiffs' Second Amended

---

[1] Although the state court petition does not make clear that the parties are diverse, the Defendants' respective Rule 7.1 Disclosure Statements [ECF Nos. 2, 37] indicate that the Defendants are in fact citizens of different states from the Plaintiffs, thus establish diversity jurisdiction.

Complaint [ECF No. 24].[2] In the Second Amended Complaint, the Plaintiffs assert claims of negligence, negligence per se, negligent entrustment, gross negligence, and IIED. (ECF No. 24.) The Defendants FedEx and UPS filed separate Motions to Dismiss [ECF Nos. 29, 31] and FedEx followed up by partially joining UPS's Motion to Dismiss [ECF No. 32 (joining in UPS's argument against the substantive sufficiency of the Plaintiffs' claims)].

On November 4, 2024, pursuant to 28 U.S.C. § 1404(a), the court transferred this matter to the Del Rio Division, the division where the underlying events giving rise to the litigation occurred and where related cases are being adjudicated. (ECF No. 34.) On November 12, 2024, the Plaintiffs subsequently filed (1) a combined response to Fed Ex's motion to dismiss/motion to strike FedEx's motion to dismiss/motion for judgment on the pleadings. (ECF No. 36.) FedEx promptly filed a Reply to the Plaintiffs' Response to FedEx's Motion to Dismiss [ECF No. 42], a Response to Plaintiff's Motion for Judgment on the Pleadings [ECF No. 46], and a Response to Plaintiff's Objection and Motion to Strike FedEx's Motion to Dismiss [ECF No. 47]. Separately, on November 22, 2024, the Plaintiffs filed a Motion to Strike UPS's Motion to Dismiss and a Response to UPS's Motion to Dismiss. (ECF No. 44.) UPS then filed its Reply on December 2, 2024. (ECF No. 48.)

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[2] The Plaintiffs have filed multiple motions to amend their complaint, including two separate filings styled as "Second Amended Complaint." On October 10, 2024, the Plaintiffs filed a partially unopposed motion for leave to amend their First Amended Complaint [ECF No. 22], which the Court granted on October 15, 2024. The Plaintiffs then filed the Second Amended Complaint on October 17, 2024. (ECF No. 24.) The Plaintiffs subsequently filed another motion to amend on October 21, 2024 [ECF No. 25], attaching a proposed further amended complaint which is also labeled "Second Amended Complaint," despite its substantive differences from the version filed on October 17. Because the Court has not granted leave to file the October 21 version, the October 17 filing [ECF No. 24] remains the operative Complaint unless further leave is granted.

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

When determining whether a claim is properly stated, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotations omitted). However, the court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotations omitted). In ruling on a Rule 12(b)(6) motion to dismiss, courts generally should not go beyond the pleadings and "must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996); Fed R. Civ. P. 12(d).

"If the complaint establishes the applicability of a federal preemption defense, it can properly be the subject of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss." *Simmons v. Sabine River Authority Louisiana*, 732 F.3d 469, 473 (5th Cir. 2013). Courts have applied this principle in the context of both the ADA and the FAAAA. *See, e.g., Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 618 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (addressing ADA preemption); *Patterson v. Hunt Perfection LLC*, 768 F. Supp. 3d 781, 787 (S.D. Tex. 2025) (addressing FAAAA preemption).

## III. ANALYSIS

### *A. Plaintiffs' Motion to Strike*

Before turning to the substance of the Defendants' Motions to Dismiss [ECF Nos. 29, 31, 32], the Court must first resolve the Plaintiffs' Motions to Strike [ECF Nos. 36, 44] on the grounds of untimeliness. The Plaintiffs argue that FedEx's Motion to Dismiss [ECF No. 29] was procedurally improper because it was filed without first submitting an Answer and was six days late under the sixty-day deadline triggered by FedEx's Waiver of Service. (ECF No. 36 at ¶¶ 9, 25.) FedEx counters that the Plaintiffs' motion is based on an incorrect deadline. (ECF No. 47.)

As for UPS, the Plaintiffs assert that its Motion to Dismiss [ECF No. 31] was untimely because it was filed over three months after UPS's Answer and fails to specify grounds for dismissal under Rule 12(b). (ECF No. 44 at ¶¶ 3, 75.) UPS responds that its motion was timely under Rule 15(a)(3), having been filed within fourteen days of Plaintiffs' Second Amended Complaint [ECF No. 24]. (ECF No. 48 at 2 n.1.)

Under Federal Rule of Civil Procedure 12(a)(1)(A), a defendant must serve a responsive pleading—either an answer or a Rule 12(b) motion—within twenty-one days of being served with the summons and complaint, unless service is waived, in which case the deadline extends to sixty days. *See* Fed. R. Civ. P. 12(a)(1)(A)(i)–(ii). If the case is removed from state court to federal court prior to the defendant filing an answer, Rule 81(c)(2) governs the deadline to respond. In that case, a defendant must serve a responsive pleading within the longest of the following timeframes: (1) seven days after the notice of removal is filed, (2) twenty-one days after receiving the initial pleading, or (3) twenty-one days after being served with the summons. *See* Fed. R. Civ. P. 81(c)(2). However, if the plaintiff amends their complaint, Rule 15(a)(3) resets the response deadline. The defendant must then respond to the amended pleading within the time remaining to

respond to the original pleading or within fourteen days after service of the amended pleading, whichever is later. *See* Fed. R. Civ. P. 15(a)(3).

On July 9, 2024, prior to service of the summons on UPS or FedEx, UPS removed the case to federal court and promptly filed its Answer [ECF No. 3]. On August 9, 2024, the Plaintiffs filed their First Amended Complaint [ECF No. 13], and both FedEx and UPS waived service on August 23, 2024. (ECF No. 36 at ¶ 25, Ex. B; ECF No. 16.) According to those waivers, FedEx and UPS received the Plaintiffs' First Amended Complaint [ECF No. 13] on August 22, 2024, purportedly initiating a 60-day deadline of October 21, 2024, to respond. (*See* Fed. R. Civ. P. 12(a)(1)(A)(ii).)

However, before the October 21, 2024, deadline expired, the Plaintiffs filed a Second Amended Complaint on October 17, 2024. (ECF No. 24.) Under Rule 15(a)(3), this filing reset the deadline to respond to fourteen days after the amended complaint was filed—making the new deadline October 31, 2024. FedEx filed its Motion to Dismiss [ECF No. 29] on October 28, 2024, and UPS filed its Motion to Dismiss [ECF No. 31] on October 30, 2024. Accordingly, both motions were timely under Rule 15.[3]

---

[3] The Court questions the effect of UPS's waiver. If, pursuant to Rule 12(a)(1)(A)(ii), a defendant waives service of a summons and a complaint under Rule 4(d), they have 60 days to respond to the attached complaint. The waiver was effective for FedEx, who was not served with the initial pleading or summons before executing the waiver and had not yet made an appearance. UPS, however, filed an Answer [ECF No. 3] upon removal, thus making a general appearance and waiving its right to object to service of process. *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 214 n.15 (5th Cir. 2005). From then on, Rule 5's less stringent requirements for serving a pleading applied to UPS, where service can be accomplished in a variety of ways, including by "filing it with the court's electronic-filing system" or "delivering it by other means that the person consented to in writing—in which event service is complete when the person making service delivers it to the agency designated to make delivery." Fed. R. Civ. P. 5(b)(2). Rule 4(d)'s 60-day extension simply does not apply to Rule 5.

However, the question of how much time UPS had to respond to the First Amended Complaint still remains. Typically, under Rule 15(a)(3), UPS would have 14 days from receipt of the amended pleading to respond. Alternatively, the Plaintiff's transmission of a waiver form to UPS, although not an initiation of effective waiver of service under Rule 4(d), could be construed as a mutual agreement to extend the response deadline. The Court need not resolve this issue for two independent reasons. First, even assuming the shorter deadline applies, the Plaintiff did not move for default judgment until after filing the Second Amended Complaint [ECF No. 24] on October 17, 2024. By failing to seek default prior to that filing, the Plaintiff waived any argument that UPS's response to the First Amended Complaint was untimely. Second, courts retain the power to absolve defendants from the requirement to respond to amended pleadings. Fed. R. Civ. P. 15(a)(3); *see also 3 James Wm. Moore et al., Moore's Federal Practice* § 15.17[6] (3d ed. 2023) ("When an amended pleading does not add new parties, new claims, or significant new factual allegations, courts are often willing to allow the previously filed response to the original pleading to suffice."). Even

The Plaintiffs also argue that FedEx was required to file an answer before submitting a motion to dismiss. (ECF No. 36 at ¶ 9.) The Court disagrees. A Rule 12(b) motion to dismiss is a pre-answer motion that must be filed within the time allowed for serving a responsive pleading—whether that's twenty-one or sixty days. *See* Fed. R. Civ. P. 12(b); 12(a)(4). Once such a motion is filed, the deadline to answer is tolled until the Court rules on the motion. *See* Fed. R. Civ. P. 12(a)(4). Requiring a defendant to answer before raising threshold defenses would contradict the structure and purpose of Rule 12(a)(4). Further, the Fifth Circuit has held that motions to dismiss *must* be filed before or at the same time as the answers. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). Thus, the Plaintiffs' argument is without merit.

Finally, the Plaintiffs contend that UPS's Motion to Dismiss [ECF No. 31] fails to specify the grounds for dismissal under Rule 12(b). (ECF No. 44 at ¶ 75.) Again, the Court disagrees. Although UPS does not explicitly cite Rule 12(b)(6) or use the phrase "failure to state a claim," the substance of its argument is unmistakable. In the Legal Standard section of their Motion to Dismiss [ECF No. 31], UPS states: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" and cites the leading cases governing Rule 12(b)(6) motions—*Iqbal* and *Twombly*. (ECF No. 31 at 7.) The Fifth Circuit made clear in *Agredano v. State Farm Lloyds* that the pleading standard does not demand "magic words" or formulaic language when the basis for relief is otherwise clear. 975 F.3d 504, 506 (5th Cir. 2020).

Moreover, UPS's vagueness is justified under the uncommon procedural posture presented here. There is no clear guidance in the Federal Rules on how to treat a motion to dismiss an

---

when courts choose not to exercise that authority and consider said non-response as a technical violation of Rule 15, "courts rarely enforce a waiver as a result of this violation." *3 James Wm. Moore et al., Moore's Federal Practice* § 15.17[6] (3d ed. 2023).

amended complaint when the defendant has already answered the original complaint. In *Al Rushaid v. Natl. Oilwell Varco, Inc.*, No. Civ. A. H-11-3390, 2012 WL 1981990 (S.D. Tex. June 1, 2012), the court looked to *Norflet v. John Hancock Fin. Servs., Inc.*, 422 F. Supp. 2d 346 (D. Conn. 2006), which addressed a similar issue and deliberately avoided choosing between a Rule 12(b)(6) motion to dismiss and a Rule 12(c) judgment on the pleadings. Instead, the *Norflet* court reasoned that both motions "yield[ed] identical analyses under the same standard of review," and proceeded with the analysis without formally designating the motion under either subsection. *Id.* The Southern District adopted this same approach and further noted that despite the motion's "procedural quirks," it was ripe for review since "Rule 12(h)(2) explicitly preserves Defendants' failure to state a claim defense from waiver, and allows it to be raised any time before trial." *Id.* (citing *In re Morrison,* 421 B.R. 381, 389 (Bankr. S.D. Tex. 2009)). Here, while the Court chooses to interpret UPS's motion under Rule 12(b)(6), it notes that a Rule 12 motion may be reviewed without definitively assigning it to a particular subsection, with the same outcome. Accordingly, the Plaintiffs' Motions to Strike [ECF Nos. 36, 44] are **DENIED**.

***B. Motion for Judgment on the Pleadings***

Next, the Court will consider the Plaintiffs' Motion for Judgment on the Pleadings [ECF No. 36]. Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Rule 7(a) clarifies that the pleadings are considered closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is asserted. *See 5C Wright & Miller, Federal Practice & Procedure* § 1367 (3d ed. 2004). A motion brought pursuant to Federal Rule of Civil Procedure 12(c) should be granted if there is no issue of material fact and if the pleadings show that the moving party is entitled to judgment as a matter of law. *Greenberg*

*v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir.1973). The inquiry is similar to that used for a motion to dismiss under Rule 12(b)(6), focusing on the allegations in the pleadings rather than the sufficiency of the evidence. *Ackerson v. Bean Dredging L.L.C.*, 589 F.3d 196, 209 (5th Cir. 2009).

While not typical, plaintiffs can and do file Rule 12(c) motions. *See, e.g., Ellis v. Clarksdale Pub. Utilities*, 2023 WL 3302839, at *2 (5th Cir. May 8, 2023); *Hendler v. Allstate Ins. Co.*, 2020 WL 6742798, at *2 n.6 (E.D. La. Nov. 17, 2020); *Koncak v. Deutsche Bank Nat'l Tr. Co.*, 2020 WL 5219558, at *2 (N.D. Tex. Aug. 17, 2020), report and recommendation adopted, 2020 WL 5215128 (N.D. Tex. Sept. 1, 2020); *Haynes v. United States*, 2016 WL 9274015, at *1 (W.D. Tex. June 30, 2016); *Allstate Assignment Co. v. Cervera*, 2014 WL 12496902, at *1 (W.D. Tex. Dec. 8, 2014), report and recommendation adopted, 2015 WL 11705061 (W.D. Tex. Mar. 23, 2015). In such cases, a plaintiff alleges that the defendant's answer essentially admits or fails to deny the claims in the complaint.

Here, the Plaintiffs filed their Rule 12(c) motion [ECF No. 36] prior to Defendant FedEx filing an answer. At this point, the pleading stage remains open. *See 5C Wright & Miller, Federal Practice & Procedure* § 1367 (3d ed. 2004) (citing Fed. R. Civ. P. 7(a)). Because the pleadings were not closed at the time the Plaintiffs filed their motion, the Court finds the motion untimely and denies it on that basis.

***C. The Defendants' Motions to Dismiss***

Having resolved the preliminary issue of timeliness, the Court now turns to the substance of the Defendants' Motions to Dismiss [ECF Nos. 29, 31, 32] and the legal sufficiency of the Plaintiffs' claims. The Defendants argue that the Plaintiffs' claims are preempted by federal statute. FedEx claims preemption under the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C.

§ 41713(b), and UPS claim preemption under the Federal Aviation and Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1). (ECF No. 29 at 4–9; ECF No. 31 at 8–14.) The Defendants additionally argue that the Plaintiffs fail to plausibly allege essential elements of their claims. (ECF No. 31 at 14–20; ECF No. 32.) Because the Court finds that the Plaintiffs' claims are preempted by federal law, it need not address the Defendants' second argument.

***1. ADA***

In 1978, Congress enacted the ADA, which largely deregulated domestic air transport. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995). "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). Specifically, the ADA's preemption provision states: "a State[ ] . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

The Court begins its analysis by confirming that the Plaintiffs' tort claims fall within the scope of the preemption clause of the ADA. Under Texas law, the claims asserted by the Plaintiffs, which include negligence, negligence per se, negligent entrustment, gross negligence, and IIED, are all governed by common-law principles. *See, e.g.*, *Leitch v. Hornsby*, 885 S.W.2d 243 (Tex. App.—San Antonio 1994), *judgment rev'd on other grounds*, 935 S.W.2d 114 (Tex. 1996) (negligence); *Perry v. S.N.*, 973 S.W.2d 301 (Tex. 1998) (negligence per se); *In re Acad., Ltd.*, 625 S.W.3d 19 (Tex. 2021) (negligent entrustment); *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 453 (Tex. 2002) (gross negligence); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 441 (Tex. 2004) (IIED). The Supreme Court in *Northwest Inc. v. Ginsberg* confirmed that "state

common-law rules fall comfortably within the language of the ADA pre-emption provision." 572 U.S. 276, 281 (2014). The Court further explained that a common-law rule is unquestionably a "provision" under the ADA, as it "clearly has the force and effect of law." *Id.* at 282 (internal citations omitted). Because the Plaintiffs' claims are grounded in state common law, they fall within the scope of the ADA's preemption clause.

Next, the Court turns to whether such claims "relate[] to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). In *Morales*, the Supreme Court interpreted the phrase "relating to" in the ADA's preemption provision broadly, concluding all "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted" by the ADA. 504 U.S. at 384 (internal citations omitted). Interpreting *Morales*, the Fifth Circuit has held that "[a]ny state law, including state common law, 'having a connection with or reference to' airline prices, routes, or services is preempted unless the connection or reference is 'too tenuous, remote, or peripheral.'" *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010) (quoting *Morales*, 504 U.S. at 390). Because the Plaintiffs' tort claims against FedEx *directly* arise from FedEx's alleged transportation of the AR-15 used by Ramos at Robb Elementary, [ECF No. 24 at 11], they are sufficiently related. The ultimate question then becomes whether the transportation of the AR-15 is a service of an air carrier. The Court concludes that it is.

"[A]irline services" include "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the *transportation* itself." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (emphasis added). While no binding court has done so, several district courts within the Fifth Circuit have interpreted claims relating to an air carrier's shipment of goods to be within the air carriers "services" and thus preempted by the ADA. *See, e.g.*, *Cash Am. Pawn, L.P. v. Fed. Exp. Corp.*, 109 F. Supp. 2d 513, 514 (N.D. Tex. 2000) (negligence claim

relating to a lost shipment of goods was preempted by the ADA); *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 611-13 (N.D. Tex. 2016) (dismissing tortious interference with business relations claim as preempted by the ADA based on refusal to transport requested items); *Trujillo v. Am. Airlines, Inc.*, 938 F. Supp. 392 (N.D. Tex. 1995) (Fitzwater, J.), *aff'd*, 98 F.3d 1338 (5th Cir. 1996) (per curiam) (unpublished table decision) (negligence and gross negligence claims for loss of a commercial package were preempted by the ADA). The Fifth Circuit further explained in *Hodges* that state tort law claims are preempted by the ADA when they would have a "forbidden significant effect" on airline rates, routes, or services contrary to the purpose of the ADA. 44 F.3d at 339. While the Fifth Circuit did not define the term specifically, it made clear that state-law claims have forbidden significant effects when they "result in significant de facto regulation of airline . . . practices." *Id.*

In the Plaintiffs' Second Amended Complaint, the Plaintiffs allege that FedEx's conduct was tortious because they did not, "prior to the shipment of the firearm, forward a signed sworn statement to the shooter's residence, and receive a return receipt evidencing delivery of the statement." (ECF No. 24 at ¶ 10.) Further, the Plaintiffs allege that the "actions of . . . [FedEx] caused and proximately caused the delivery, and the modification of a weapon into the hands of a person likely to act as a school shooter." (*Id.* at ¶ 18.) Implicit in this assertion is the expectation that commercial shippers like FedEx engage in a pre-shipment analysis of all transported goods, which include identifying the goods being transported as well as ascertaining the age, mental status, and motivation of the recipient. The Court finds that such an expectation would have a significant effect on airline services and would result in a de facto regulation.

Finally, the Plaintiffs allege that preemption under the ADA is not appropriate for FedEx because it is "not an airline." (ECF No. 36 at ¶ 13.) This assertion is without merit. The ADA

defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). Freight shippers who commercially transport goods through the air, like FedEx, fall squarely within that definition. Other courts, as well as federal agencies, agree on this point. *See, e.g.*, *Headstream Tech., LLC v. FedEx Corp*, No. 22-1410, 2023 WL 1434054, at *2 (6th Cir. Feb. 1, 2023); *Rodger Blanco v. Federal Express*, 741 F. App'x 587, 588 n.1 (10th Cir. 2018); *Cash Am. Pawn, L.P. v. Federal Express Corp.*, 109 F. Supp. 2d 513, 523 (N.D. Tex. 2000); *Federal Express Corp. v. United States Postal Serv.*, 55 F. Supp. 2d 813, 817 (W.D. Tenn. 1999). FedEx holds both a Form 8430-18 ("Air Carrier Certificate") and an "Air Operator Certificate" with the U.S. Department of Transportation and Federal Aviation Administration. (ECF No. 30 at 5–6.) These certificates, respectively, verify that FedEx is "authorized to operate as an air carrier and conduct common carriage operations" and is "authorized to perform commercial air operations."[4] (*Id.*)

Nevertheless, the Plaintiffs insist that FedEx is not an airline within the context of this suit because "[t]here is no proof that the weapon was shipped by an airline either during the entire route or all of the route which delivered the AR-15." (ECF No. 36 ¶ 13.) This argument is similarly without merit. The text of the ADA clearly preempts enforcement of state common law torts which "relate[] to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). When relating to the commercial shipment of goods, the ADA does not require that the goods be shipped entirely

[4] Rule 201 of the Federal Rules of Evidence provides that a court may take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (citing Fed. R. Ev. 201(b)). Judicial notice may be taken of "matters of public record" that are not subject to reasonable dispute. *Norris v. Hearts Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)) ("[I]t is clearly proper on deciding a 12(b)(6) motion to take judicial notice of matters of public record."). "Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports," as well as "administrative records," as a matter of public record. *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981). FedEx's FAA certificates fall squarely within the realm of judicially noticeable documents. Further, no party has raised any reason to "mistrust" the FAA's certificates. Therefore, the Court can and does take judicial notice of FedEx's "Air Carrier Certificate" and "Air Operator Certificate."

through the air; nor do the Plaintiffs cite any authority to support their claim that partial ground transport removes a carrier from the scope of ADA preemption. Rather, the ADA's preemption occurs when the state common law tort claim relates to an air carrier's services. 49 U.S.C. § 41713(b)(1). Because the Plaintiffs allege that FedEx committed several state common law torts through their transportation, *i.e.*, a service, of the AR-15, and because FedEx is an air carrier under the ADA, the Plaintiffs' claims against FedEx are preempted. Since the Plaintiffs' claims of negligence, negligence per se, negligent entrustment, gross negligence, and IIED against FedEx are preempted by the ADA, the Plaintiffs fail to state a claim to relief that is plausible on its face.

***2. FAAAA***

The Plaintiffs' claims against UPS are similarly preempted by federal law. In 1994, in response to competitive advantages air carriers held over motor carriers resulting from the ADA, Congress sought to deregulate the trucking industry and preempt state trucking regulation through the FAAAA. *Rowe v. New Hampshire Motor Trans. Ass'n*, 552 U.S. 364, 368 (2008); *see also Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1022 (9th Cir. 2020). The FAAAA preemption provision "borrowed language" from the ADA's preemption clause. *Rowe*, 552 U.S. at 368. Specifically, the FAAAA preemption provision provides in relevant part: "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). UPS argues that the Plaintiffs' claims are preempted by the relevant provision of the FAAAA. The Court agrees.

The Court begins its analysis by reaffirming that the Plaintiffs' claims are covered by the preemption provision. The Plaintiffs' claims are governed by common law and are thus considered

"provisions" within the language of the ADA's preemption provision. *Ginsberg*, 572 U.S. at 282; *see supra* Section III(2)(a). The preemption language of the FAAAA directly mirrors the earlier ADA, and in interpreting identical provisions of those two statutes, the Supreme Court held that the FAAAA's preemption must also cover said common law claims. *Rowe*, 552 U.S. at 368, 370 ("[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates . . . the intent to incorporate its judicial interpretations as well."). Further, in borrowing language from the ADA, Congress expressed a clear intent that preemption under the FAAAA be interpreted consistent with preemption under the ADA. *See id.* at 370 (citing H.R. Conf. Rep. No. 103–677, p. 83 (1994), reprinted in 1994 U.S.C.C.A.N. 1676, 1755) ("motor carriers will enjoy the identical intrastate preemption of prices, routes and services as that originally contained in the ADA" (internal quotation marks omitted)). Thus, the Plaintiffs' claims are covered by the FAAAA.

Next, the Court turns to whether UPS is a motor carrier as covered by the FAAAA. Title 49 defines "motor carrier" as a person providing motor vehicle transportation for compensation. § 13102(14). While no specific facts have been alleged that explicitly state that UPS engages in motor vehicle transportation *for compensation*, both parties concede that UPS is a motor carrier under the FAAAA. (*See* ECF No. 31 at 12; ECF No. 44 at ¶ 71.) Moreover, the Fifth Circuit has affirmed a district court decision which explicitly held UPS to be a motor carrier. *See Shorts v. United Parcel Serv.*, No. CIV. A. 3:97-CV-0682R, 1999 WL 118791, at *3 (N.D. Tex. Feb. 25, 1999), *aff'd*, 204 F.3d 1114 (5th Cir. 1999). As a result, the Court concludes that UPS is a motor carrier covered by the FAAAA.

Finally, the Court turns to whether the Plaintiffs' claims "relate[] to a price, route, or service of any motor carrier . . . with respect to the transportation of property" 49 U.S.C. § 14501(c)(1).

In *Dan's City Used Cars, Inc. v. Pelkey*, the Supreme Court interpreted the FAAAA's "related to" provision as embracing state laws or provisions "having a connection with or reference to" carrier rates, routes, or services, whether directly or indirectly. 569 U.S. 251, 260 (2013). The basis of the Plaintiffs' claims against UPS is that UPS shipped the Hellfire trigger system to Ramos, which subsequently caused damages to the Plaintiffs. Title 49 defines "transportation," in relevant part, as "services related to th[e] movement" of property, "including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." § 13102(23)(B). The Plaintiffs' claims against UPS are directly related to the receipt, movement, and delivery of the Hellfire trigger system. Accordingly, the Plaintiffs' claims relate to a service of a motor carrier with respect to the transportation of property.

Since it is clear that said claims involve the transportation of property, the final question then becomes whether the commercial transportation of the Hellfire trigger system is a "service of any motor carrier." 49 U.S.C. § 14501(c)(1). The Court concludes that it is. Because the Plaintiffs' claims arise from UPS's alleged role in transporting the Hellfire trigger system, they necessarily implicate the "service" of a motor carrier within the meaning of the FAAAA. Courts interpreting the FAAAA have consistently held that the term "service" encompasses the core functions of a carrier's operations, including the acceptance, handling, and delivery of goods. *See Rowe*, 552 U.S. at 373–74 (holding that state laws requiring carriers to verify recipient eligibility and to inspect packages directly regulated carrier services and were therefore preempted). Here, the Plaintiffs seek to impose liability on UPS for its role in delivering a product that allegedly caused harm, which would require judicial scrutiny of how UPS accepted, processed, and delivered

the shipment. Such scrutiny would intrude upon the domain Congress expressly reserved to market forces and federal oversight.

Accordingly, the Court finds that the Plaintiffs' claims are preempted by the FAAAA because they relate to the service of a motor carrier with respect to the transportation of property. Because the Plaintiffs' claims are preempted, the Plaintiffs fail to "state a claim to relief that is plausible on its face." As a result, Defendant UPS's Motion to Dismiss must be granted.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Plaintiffs' Motions to Strike [ECF Nos. 36, 44] and Motion for Judgment on the Pleadings [ECF No. 36] are **DENIED**, and the Defendants' Motions to Dismiss [ECF Nos. 29, 31, 32] are **GRANTED.** It is further **ORDERED** that the Clerk of Court shall issue a clerk's judgment, terminating the present cause of action and any additional pending motions.

SIGNED and ENTERED on this 29th day of September 2026.

ALIA MOSES
Chief United States District Judge